IN THE SUPREME COURT OF PENNSYLVANIA
EASTERN DISTRICT

**SAYLOR, C.J., BAER, TODD, DONOHUE, DOUGHERTY, WECHT, MUNDY, JJ.**

| | | |
|---|---|---|
| SYETA BREWINGTON, AS PARENT AND NATURAL GUARDIAN FOR JARRETT BREWINGTON, A MINOR, AND SYETA BREWINGTON IN HER OWN RIGHT | : | No. 23 EAP 2017 |
| | : | |
| | : | Appeal from the Order of |
| | : | Commonwealth Court entered on |
| | : | November 14, 2016 at No. 886 CD |
| | : | 2015 reversing the Order entered on |
| | : | April 27, 2015 in the Court of Common |
| v. | : | Pleas of Philadelphia County, Civil |
| | : | Division, at No. 1974 November Term |
| | : | 2013 |
| CITY OF PHILADELPHIA, WALTER G. SMITH ELEMENTARY SCHOOL AND THE SCHOOL DISTRICT OF PHILADELPHIA | : | |
| | : | ARGUED:  May 15, 2018 |
| | : | |
| | : | |
| | : | |
| | : | |
| APPEAL OF: THE SCHOOL DISTRICT OF PHILADELPHIA | : | |
| | : | |

## OPINION

**JUSTICE TODD**                    **DECIDED:  December 28, 2018**

The Political Subdivision Tort Claims Act ("Act"), 42 Pa.C.S. §§ 8541 *et seq.*, grants governmental immunity from tort liability to local political subdivisions, including public schools.  Specific exceptions exist, however, to this otherwise broad grant of immunity to these entities.  In this appeal, we consider one of these exceptions — the real property exception to governmental immunity — and, in particular, whether the absence of padding on a gym wall, into which a student ran during gym class, causing injury, falls within the exception.  For the reasons set forth below, we find the lack of padding of a gym wall may constitute negligence in the care, custody, and control of real

property, and, thus, falls within the Act's real estate exception. Therefore, we affirm the order of the Commonwealth Court.

On May 9, 2012, nine-year-old Jarrett Brewington participated in a relay race during gym class at Walter G. Smith Elementary School, in Philadelphia. While Jarrett was running, he tripped and fell, causing him to propel into the wall at the end of the gym, hit and cut his head, and lose consciousness. No padding covered the gym wall, which was made of concrete. Jarrett was later diagnosed with a concussion, was absent from school for one to two months after the incident, and continued experiencing headaches and memory problems years later.

On November 19, 2013, Jarrett's mother, Syeta Brewington, as parent and natural guardian and in her own right (collectively, "Mother"), brought an action against Walter G. Smith Elementary School and the School District of Philadelphia (collectively, the "School") in the Philadelphia County Court of Common Pleas.[1] Mother alleged that Jarrett's injuries occurred because of a defective and dangerous condition of the premises — namely, the concrete gym wall — and that the School was negligent in failing to install padded safety mats to cushion the wall. In response, the School filed, *inter alia*, a motion for summary judgment, raising the defense of governmental immunity, and claiming that the real property exception to governmental immunity under the Act did not apply.

By way of brief background, in response to our Court's 1973 abrogation of the judicially-created doctrine of governmental immunity in *Ayala v. Philadelphia Board of Education*, 305 A.2d 877 (Pa. 1973), the legislature enacted, *inter alia*, the Act, which provides for governmental immunity against damages due to injury to a person or property caused by acts of a local agency, except as provided therein. Specifically, Section 8541

---

[1] Although also sued by Mother, by stipulation of the parties and order dated February 4, 2015, the City of Philadelphia was dismissed from the action.

of the Act sets forth that local government agencies generally are immune from tort liability.[2]  Section 8542, however, lists a series of exclusions to governmental immunity for specific categories of tort claims, providing, in pertinent part, an exception for negligence in the care, custody, or control of real property:

> **(a) Liability imposed.--**A local agency shall be liable for damages on account of an injury to a person or property within the limits set forth in this subchapter if both of the following conditions are satisfied and the injury occurs as a result of one of the acts set forth in subsection (b):
>
> > (1) The damages would be recoverable under common law or a statute creating a cause of action if the injury were caused by a person not having available a defense under section 8541 (relating to governmental immunity generally) or section 8546 (relating to defense of official immunity); and
>
> > (2) The injury was caused by the negligent acts of the local agency or an employee thereof acting within the scope of his office or duties with respect to one of the categories listed in subsection (b). As used in this paragraph, "negligent acts" shall not include acts or conduct which constitutes a crime, actual fraud, actual malice or willful misconduct.
>
> **(b) Acts which may impose liability.--**The following acts by a local agency or any of its employees may result in the imposition of liability on a local agency:
>
> > \*       \*       \*
>
> > (3) *Real property.*--The care, custody or control of real property in the possession of the local agency, except that the local agency shall not be liable for damages on account of any injury sustained by a person intentionally trespassing on real property in the possession of the local agency. . . .

42 Pa.C.S. § 8542.

---

[2]  Specifically, Section 8541 provides that "[e]xcept as otherwise provided in this subchapter, no local agency shall be liable for any damages on account of any injury to a person or property caused by any act of the local agency or an employee thereof or any other person."  42 Pa. C.S. § 8541.

In the instant case, Judge Shreeves-Johns granted the School's motion for summary judgment, finding Mother's tort action did not satisfy the real property exclusion. The court, focusing on paragraph 10 of Mother's complaint, which alleged that Jarrett's injuries were caused by a "defective and dangerous condition of the premises caused directly by the actions/inactions of [the School] (ie., [sic] gym without safety mats)," Plaintiff's Complaint at ¶ 10, concluded that safety mats are personalty — not realty — and, thus, do not fall within the real property exception to governmental immunity under the Act, *citing Rieger v. Altoona Area School District*, 768 A.2d 912 (Pa. Cmwlth. 2001). Further, the court rejected Mother's claim that the construction of the gym wall without impact protection constituted a negligent design of the wall or negligent construction, as it was "comingled" with Mother's claim of negligent care, custody, and control of the real estate, and, thus, according to the trial court, *Rieger* precluded recovery. Trial Court Opinion at 9.

On appeal, in a unanimous, published opinion authored by Judge Wojcik, an *en banc* panel of the Commonwealth Court reversed. *Brewington v. City of Philadelphia*, 149 A.3d 901 (Pa. Cmwlth. 2016). In so doing, the court first discussed its case law concerning the real property exception to governmental immunity under the Act. The court explained that it has repeatedly held that allegations of a governmental agency's negligence in the care, custody, and control of real property that rendered the property unsafe for its intended and foreseeable use fall within the real property exception to governmental immunity. The court offered, however, that the real property exception is limited to injuries involving real property, and does not extend to injuries caused by personalty.

With respect to the determination of whether an injury involves real property or personalty, the court relied upon its decision in *Singer v. School Dist. of Philadelphia*, 513

A.2d 1108 (Pa. Cmwlth. 1986), wherein a student gymnast who was performing a stunt over a vaulting horse fell and injured himself when he missed the mat and fell on the hardwood floor. In that case, the student sued the school district, alleging that the school was negligent in failing to control the landing surface by providing sufficient mats on the gym floor for the student's protection. The court noted that it held that the real property exception applied in *Singer* because, although the mat which could have prevented the injury was personalty, the unprotected hardwood floor which *caused* the student's injury was not, thus falling within the real property exception.

Although *Singer* would appear to be analogous to the instant case, the court conceded that, in its 2001 decision in *Rieger* (finding that even assuming failure to provide mats in cheerleading practice area caused injury, such negligent conduct would not fall within the real property exception, as mats were not affixed to the real property, and as such, constituted personalty), it concluded that *Singer* was implicitly overruled by this Court's decision in *Blocker v. City of Philadelphia*, 763 A.2d 373 (Pa. 2000) (holding that chattel not attached to realty — there, a set of bleachers that collapsed — remains personalty for purposes of the real property exception to governmental immunity). However, the court in the matter *sub judice* pointed out that, in *Rieger*, no claim was raised that the student's injury was *caused* by personalty; thus, it viewed *Blocker* as inapposite and, thus, that it should not have been relied upon in *Rieger*. Moreover, the court opined that the *Rieger* court incorrectly focused its analysis on the nature of the chattel that could have been used to protect students, rather than the cause of the plaintiff's injury — the hardwood floor — which was real property. Thus, the court concluded that *Rieger* "misconstrued *Blocker* as overruling *Singer*" and misconstrued *Singer* as "holding that personalty placed on real property to render it safe for its intended use is considered to be real property for purposes of governmental immunity."

*Brewington*, 149 A.3d at 909, 910 (emphasis omitted). In sum, the court emphasized that, contrary to its holding in *Rieger*, the analysis of whether the real property exception applies centers on the cause of the injury, rather than the nature of the remedy that should have been provided. Accordingly, the court reaffirmed its decision in *Singer*, overruled *Rieger*, and reversed the trial court's grant of summary judgment, concluding that, because Mother's claims concerned an injury caused by real property — i.e., the concrete gym wall — the real property exception to governmental immunity applied regardless of the fact that Mother averred that personalty — i.e., the protective mat — would have prevented Jarrett's injury.

We consider in this appeal whether the negligence alleged in this case concerned real property and whether the Commonwealth Court impermissibly broadened the real property exception. We also granted allocatur to consider whether Mother's claim of a defect in the real property is more properly construed as a claim of negligent supervision, which would not satisfy the real property exception. As these issues raise pure questions of law, our standard of review is *de novo*, and our scope of review is plenary. *Summers v. Certainteed*, 997 A.2d 1152, 1159 (Pa. 2010). Further, as we have frequently stated, "summary judgment is appropriate only in those cases where the record clearly demonstrates that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. . . . When considering a motion for summary judgment, the trial court must take all facts of record and reasonable inferences therefrom in a light most favorable to the non-moving party." *Id.* Importantly, the trial court "may only grant summary judgment 'where the right to such judgment is clear and free from all doubt.'" *Id.* Moreover, "an appellate court may reverse a grant of summary judgment if there has been an error of law or an abuse of discretion." *Id.* (internal citations omitted).

The School first argues that it was not engaged in an act that involved the care, custody, or control of real property, and that no act involving the care, custody, or control of real property caused Jarrett's injury. According to the School, the wall had no defect or condition that caused Jarrett's injury. Rather, the School contends the injury was caused by (1) a teacher directing students to run toward a wall (i.e., negligent supervision); and (2) the student tripping and falling. Most specifically, the School contends that the real property exception to governmental immunity is inapplicable in this case because Jarrett was not engaged in an activity involving the care, custody, and control of real property when he was injured.

Stressing that any exceptions to the rule of immunity must be narrowly interpreted, the School offers that courts have applied two different approaches in determining whether to apply the real property exception — the approach articulated in *Grieff v. Reisinger*, 693 A.2d 195 (Pa. 1997), and that considered in *Blocker v. City of Philadelphia*, 763 A.2d 373 (Pa. 2000). The School maintains that both approaches counsel against applying the real property exception in this case.

Specifically, applying the *Grieff* approach, which, according to the School, considers whether the injury was caused by an affirmative act involving the care, custody, or control of the real property itself (in that case, negligence in the removal of paint by pouring paint thinner on the floor which ultimately ignited, and implicated the "care" of real property), the School asserts that the real property exception does not apply because Jarrett's injury was caused by the teacher's instructions to run towards the concrete wall and by Jarrett's tripping, neither of which involve caring for real property or a dangerous condition of the wall. According to the School, there was no act that constituted negligent care of the wall, and no evidence that some defect of the wall constituted a dangerous

condition; rather, the wall did what it was intended to do, "stand and be a wall." Appellants' Brief at 19.

*Blocker* involved the collapse of a bleacher resulting in an injury. The court held that, because the bleacher was not affixed to realty, it was personalty, and that, even if negligently maintained, the real estate exception did not apply to personalty. Thus, under *Blocker*, the School maintains that the real estate exception does not apply herein because Mother's claims pertained to the negligent control of padding, which is personalty. Further, the School compares and contrasts two Commonwealth Court decisions speaking to the real property exception. In *Singer*, a gymnast fell on a hardwood floor that was not covered with a mat while performing on the vaulting horse. The gymnast was permitted to proceed under the real property exception, with the court focusing on the hardwood floor. In *Rieger,* a student was injured during cheerleading practice when she fell onto an unprotected hardwood floor. The court found *Blocker* implicitly overruled its earlier decision in *Singer* and that, because, according to the court, the failure to place mats on the hardwood floor involved personalty, the claim did not fall within the real property exception.

Finally, the School warns of the repercussions of finding an exception to immunity for schools in these situations, asserting that finding an unpadded gym wall to be a dangerous condition and, thus, extending the real property exception to the facts of this case would expose school districts to liability "unless they pad nearly every conceivable wall, floor or other fixture within every piece of real estate they own." Appellants' Brief at 24. Indeed, the School claims that basketball courts, water fountains, and baseball fields would all have to be padded to avoid liability. The School further offers that merely installing padding might not be sufficient, implicating questions about how much padding is necessary and the manner in which such padding must be installed.

Related thereto, *Amicus* Pennsylvania School Boards Association maintains that the real estate exception "allows claims for damages caused by affirmative acts associated with the care or maintenance of the existing property that makes that property dangerous in and of itself," but "does not allow claims based on theories that require second-guessing government decisions about what public funds to spend on improvements to existing real estate that is not already in and of itself dangerous." *Amicus Brief* at 8. *Amicus* cautions that the Commonwealth Court's decision to apply the real property exception in this case will impact a variety of cases and "unavoidably place in the hands of juries the legislative function of dictating programmatic decisions without concomitant accountability for financing or outcomes, and make governmental liability exposures wildly unpredictable." *Id.* at 10.

In response, Mother asserts that the Commonwealth Court properly concluded that the real property exception to governmental immunity was applicable in this case. Mother claims that no personalty was involved in this case and that, as a result, the *Grieff* approach should apply. Applying that approach, Mother contends that, rather than being caused by the negligent control of gym mats (here the absence of gym mats), as the School suggested, Jarrett's injuries were actually caused by a defective and dangerous condition of the property resulting directly from the School's negligent failure to install safety mats on the gym wall, thus implicating the care, custody, and control of real property under *Grieff*. While the School maintains that it did not commit an "act" which led to Jarrett's injuries, Mother counters that the School did act in designing and constructing the defective wall.

Alternatively, under the *Blocker* approach, Mother argues that summary judgment must be denied because questions of material fact exist with regard to whether gym mats are a fixture and, more specifically, as to: "(1) whether the necessary impact protection

must be attached in such way that it cannot be removed without injuring the walls or floors, or the protective material itself, (2) if any proposed impact protection can possibly be removed after installation without damage, whether it nevertheless is intended to be part of the realty and (3) whether the wall is a dangerous condition of the property without any kind of the impact protection being affixed to it."  Appellee's Brief at 17.

Lastly, Mother criticizes the School's examples of the purported negative effects of applying the real property exception under the circumstances of this case, deeming them "absurd."  *Id.*  Mother also attempts to analogize the real estate and sidewalk exceptions to governmental immunity, appearing to suggest that, because immunity does not apply where an injury is caused by a defectively designed or constructed sidewalk, it likewise should not apply where an injury is caused by defectively designed or constructed real estate.

As this issue involves the interpretation of a statute, we necessarily begin our analysis by considering the Statutory Construction Act.  1 Pa.C.S. §§ 1501 *et seq.*  The objective of all interpretation and construction of statutes is to determine and effectuate the intention of the legislature. *Id.* at § 1921(a).  The best indication of the General Assembly's intent is the plain language of the statute.  *Martin v. Department of Transportation, Bureau of Driver Licensing*, 905 A.2d 438, 443 (Pa. 2006).  When the words of a statute are clear and unambiguous, we may not look beyond the plain meaning of the statute "under the pretext of pursuing its spirit."  1 Pa.C.S. § 1921(b).  Consequently, only when the words of a statute are ambiguous should a court seek to ascertain the intent of the General Assembly through consideration of the various factors found in Section 1921 of the Statutory Construction Act.  1 Pa.C.S. § 1921(c) (setting forth various considerations to be employed to discern the intent of the legislature); *Bayada Nurses, Inc., v. Dept. of Labor and Industry*, 8 A.3d 866, 880-81 (Pa. 2010).  Finally, in interpreting

the Act, exceptions to governmental immunity must be narrowly construed. *Dorsey v. Redman*, 96 A.3d 332, 341 (Pa. 2014).

Although the parties do not engage in a meaningful statutory construction analysis, the relevant language of the Act, set forth in full above, provides that a local agency, such as the School, shall be liable for injury to a person if (1) damages would be recoverable if the injury were caused by a person not having an available defense under governmental immunity generally, or official immunity; and (2) the injury was caused by the negligent acts of the local agency acting within the scope of its duties with respect to the care, custody, or control of real property in the possession of the local agency. 42 Pa.C.S. § 8542.

As to the first requirement, damages are recoverable at common law for harm caused to invitees by conditions of a property if the possessor of the land knows, or has reason to know, of a latent unreasonable risk of harm that he should expect the guest not to discover or recognize, and if he fails to render that condition reasonably safe. *Atkins v. Urban Redevelopment Authority of Pittsburgh*, 414 A.2d 100, 103 (Pa. 1980) (adopting Restatement (Second) of Torts § 343).[3]

The second requirement is a negligent act by the local agency with respect to the care, custody, or control of real property. In Pennsylvania, the elements of negligence are: a duty to conform to a certain standard for the protection of others against unreasonable risks; the defendant's failure to conform to that standard; a causal connection between the conduct and the resulting injury; and actual loss or damage to the plaintiff. *R.W. v. Manzek*, 888 A.2d 740, 746 (Pa. 2005). Related thereto, neither the

---

[3] The standard of care a possessor of land owes to one who enters upon the land depends upon whether the person entering is a trespasser, licensee, or invitee. *Carrender v. Fitterer*, 469 A.2d 120, 123 (Pa. 1983). While not necessary to further resolve in this matter, at a minimum, a student engaging in a gym class would be a public invitee.

terms of the Act, nor any reasonable construction of its real estate exception, requires an affirmative act on the part of the local agency. Rather, the claim may be predicated on either an affirmative act, or the failure to act, resulting in negligence in the care, custody, or control of the real property — as the statute, by its express terms, defines the term "[a]ct," as including "a failure to act." 42 Pa.C.S. § 8501; *accord Cagey v. Commonwealth*, 179 A.3d 458 (Pa. 2018).[4] Furthermore, with respect to the care, custody, or control of real property, we point out that "care" connotes "[s]erious attention . . . the conduct demanded of a person in a given situation . . . and a person's giving attention both to possible dangers, mistakes, and pitfalls and to ways of minimizing those risks." Black's Law Dictionary 225 (8th ed. 2004). *See also* Oxford Dictionary (defining "care" as "[t]he provision of what is necessary for the health, welfare, maintenance, and protection of someone or something . . . Serious attention or consideration applied to doing something correctly or to avoid damage or risk.") available at https://en.oxforddictionaries.com/definition/care. Finally, it is axiomatic that a concrete wall is not a chattel, but constitutes real property.

Applying these standards, the parties herein do not dispute that Mother's damages are recoverable at the common law, satisfying the first requirement to find an exception to immunity. As to the second requirement, Mother alleged in her Complaint, in part:

> 10. [Jarrett] was engaged in gym activities when he was caused to sustain injuries as a result of defective and dangerous condition of the premises caused directly by the actions/inactions of defendants (ie. [sic] gym without safety mats).

---

[4] For this reason, the School's reliance upon the lack of an allegation of an affirmative act by it, in connection with the care, custody, or control of real property, as being dispositive is plainly mistaken. *See* Appellants' Reply Brief at 2-3 ("Neither the Complaint nor any other part of the record makes reference to Jarrett's injuries being caused by an *affirmative act* involving the care, custody or control of real property. Because there is no affirmative act, the real property exception cannot apply." (emphasis original)).

11. Defendants were negligent in maintaining the property that was within their care, custody and control[.]

Plaintiff's Complaint at ¶ 10, 11. Further, in Count II, Mother pled:

23. [The School's] negligence and carelessness consisted of the following:

(a) [The School] caused or permitted dangerous conditions to exist;

(b) [The School] failed to make reasonable inspection of the premises, which would have revealed the dangerous condition created by the [School];

(c) [The School] failed to give warning of the dangerous condition and failed to erect barricades or to take any other precautions to prevent injury to [Jarrett];

(d) [The School] failed to remove the defective condition;

(e) [The School] failed to exercise reasonable prudence and due care to keep the gym in a safe condition for the plaintiff minor;

(f) [The School] violated the ordinance of Philadelphia County pertaining to maintenance of the premises; and

(g) [The School] failed to conform to [its] own specifications and standards as to design and maintenance of the school gymnasium.

(h) [The School's] negligence was a direct cause of injury to [Jarrett]

(i) [The School was] negligent in the care, custody and control of the premises.

(j) [The School was] negligent in failing to maintain the property in a safe condition.

(k) [The School] was otherwise negligent under the circumstances.

*     *     *

25. Solely as a result of the negligence of [the School], [Jarrett] was caused to suffer various permanent physical injuries, including, but not limited [to], concussion, post-concussion syndrome, traumatic brain injury, in addition to bumps, bruises, abrasions, and lacerations about the body which resulted in a permanent impairment.

Plaintiff's Complaint at ¶ 10, 11, 23, 25. Finally, the parties do not dispute that the concrete wall into which Jarrett fell was real property in the possession of the School.

While we are cognizant that exceptions to governmental immunity must be narrowly construed, based upon the plain language of the Act and Mother's pleadings as set forth above, we find that Mother's allegations satisfy the real property exception. Mother has plainly pled that the negligent acts, including the failure to act, of the School regarding the care, custody, and control of real property in the possession of the School caused Jarrett's injuries. Specifically, we find Mother pled negligence regarding the "care" of the real property, as that term is commonly understood to include attention to possible dangers to minimize and reduce risk, through the assertion that the School negligently failed to apply padding to the concrete gym walls. Moreover, we agree that the unpadded concrete wall which caused Jarrett's injuries constituted real property in the School's possession. In coming to this conclusion, we find the real property exception, by its express definitional terms, includes a failure to provide safety features in situations where such a duty otherwise exists. Indeed, our case law confirms that acts of a local agency which render a property unsafe for "the activities for which it is regularly used, for which it is intended to be used, or for which it may reasonably be foreseen to be used, are acts which make the local agency amenable to suit." *Mascaro v. Youth Study Center*, 523 A.2d 1118, 1124 (Pa. 1987).

Accordingly, because Jarrett's damages would have been recoverable at common law absent the protections of governmental immunity, and as Mother has sufficiently alleged that a local agency negligently failed to act regarding the care, custody, or control of real property in the agency's possession, we hold that, in these circumstances, governmental immunity does not apply and the School may be held liable for Jarrett's damages caused by the alleged negligent failure to affix mats to the gym walls. *Cf. Grieff*, 693 A.2d at 197 ("Here, [defendant's] care of the [defendant Fire Association's] property caused the fire that injured [plaintiff]. While he was removing paint from the floor, therein

caring for the real property, it ignited causing the resultant injuries to [plaintiff]. Under the real property exception's plain language, [defendants] are not immune from suit.").

In so concluding, we reject the School's assertion that the mats constituted personal property, and, thus, are outside of the real property exception to immunity. Rather, we find that the unpadded *wall* directly caused Jarrett's injuries, and that the wall constitutes real property. Therefore, we agree with the Commonwealth Court's analysis of *Singer* and *Rieger*. The court held in *Singer* that the real property exception applied because, although the mat which could have prevented the gymnast's injury was personalty, the unprotected hardwood floor which *caused* the student's injury was not, thus falling within the real property exception. Conversely, in *Rieger*, rendered 15 years later, the court found that *Singer* was implicitly overruled by our Court's decision in *Blocker*. However, as noted by the Commonwealth Court in this matter, *Rieger* incorrectly focused its analysis on the nature of the chattel that could have been used to protect students — mats on the hardwood floor — rather than the cause of the plaintiff's injury — the hardwood floor — which was real property. In reaching its conclusion below, the court stressed that, contrary to its prior holding in *Rieger*, the analysis of whether the real property exception applies centers on the cause of the injury, rather than the nature of the remedy that should have been provided.

We agree. Our decision in *Blocker* focused solely on the collapsed bleachers, which caused the plaintiff's injury; as chattel that was not affixed to realty, it constituted personalty which did not fall within the real property exception. The chattel in *Blocker* was the cause of the injury. Here, it was the wall, which is not chattel, but real property, that caused Jarrett's injuries. Thus, we find the instant matter, unlike the situation in *Blocker*, comfortably fits within the real property exception. Accordingly, we reaffirm our decision in *Blocker* to the extent it holds personalty alone may not serve as the basis to

trigger the real property exception to governmental immunity, and we disapprove *Rieger* as inconsistent with our decision today.

Finally, as suggested by Justice Wecht in his concurring opinion in *Cagey*, our approach will not "open the proverbial floodgates to unbounded [local agency] liability," as applying this exception to immunity is no guarantee of recovery: a plaintiff must plead and prove negligence to obtain relief. *Cagey*, 179 A.3d at 474 (Wecht, J., concurring). Indeed, we take comfort in the express limitation in the standard we apply: it is only the acts, or failure to act, which make the property unsafe for "the activities for which it is regularly used, for which it is intended to be used, or for which it may reasonably be foreseen to be used," which subject the local agency to suit. *Mascaro*, 523 A.2d at 1124.

Having found that Mother's allegations fit within the Act's real property exception, we conclude that the School is not immune from suit. Accordingly, we affirm the decision of the Commonwealth Court in this regard, which concluded the trial court erred in granting the School's motion for summary judgment.

The School, however, also claims that it is entitled to governmental immunity because Jarrett's injuries occurred as a result of the gym teacher's negligent supervision of his students rather than because of the wall itself, and offers that the real estate exception has consistently been found inapplicable in cases where the negligence claim involves the failure to supervise the conduct of students or other persons adequately. *See Mascaro*, 523 A.2d at 1124 (citing cases). Specifically, the School points to *Wilson v. Norristown Area School District,* 783 A.2d 871 (Pa. Cmwlth. 2001), which it claims is analogous to this matter. In *Wilson*, a field hockey coach directed his players to run interior staircases through the building, resulting in a player sustaining injuries when she fell down the stairs. The Commonwealth Court found plaintiff's claim did not fall within the real property exception, as the injury did not occur as a result of an unsafe condition

of the step, but, rather, due to the coach's negligent supervision of the team practice. According to the School, *Wilson* is on point with the matter *sub judice*, as Jarrett's injuries occurred as a result of the gym teacher's negligent supervision of the students, in directing them to run towards a concrete wall, rather than because of the wall itself. While Mother did not raise a claim of negligent supervision, the School explains that the report of Mother's expert made no allegation or finding that there was any intrinsic defect in the wall, and that statements in the report were consistent with a finding of negligent supervision, noting the report stated that "[t]he combination of close proximity from the finish line of the race and the concrete wall created an inadequate buffer zone in which [Jarrett] had to stop." Appellants' Brief at 31 (quoting Mother's Expert's Report). The School also emphasizes that Jarrett himself testified that his injury occurred because he was running too fast and tripped and fell. *Id.* at n.7 (quoting Jarrett's deposition testimony). In light of the foregoing, the School asserts that the Commonwealth Court should have viewed Mother's claim as one of negligent supervision and, thus, found that it was immune from suit due to that negligence.

Mother responds, emphasizing, as noted above, that she did not raise a claim of negligent supervision. She further notes that the *Wilson* case upon which the School relies is not binding on this Court and adds that it is distinguishable in any event, as the plaintiff in *Wilson* never alleged that her injuries were caused by a defect in real property, as here.

Again, we begin our analysis, as we must, with the language of the Act. Specifically, the Act permits an exception to governmental immunity if, *inter alia*, "[t]he injury was caused by the negligent acts of the local agency or an employee thereof acting within the scope of his office or duties with respect to one of the categories listed in subsection . . . (3) *Real property*.--The care, custody or control of real property in the

possession of the local agency, *except that the local agency shall not be liable for damages on account of any injury sustained by a person intentionally trespassing on real property in the possession of the local agency.*" 42 Pa.C.S. § 8542 (emphasis added).

Nothing in the plain language of the Act suggests that a *de facto* or *de jure* assertion of negligent supervision bars application of the real property exception. Indeed, by the express terms of the statute, the only bar to invoking the real property exception is where the injury is sustained by a person intentionally trespassing on the real property of the local agency. Thus, considering the express terms of the Act, we view a claim of negligent supervision to be distinct and independent of one regarding negligence concerning real property. While a bare claim of negligent supervision might not pass through the narrow gate of the Act's real property exception, as discussed below, such a claim does not act to bar an independent claim of the negligent care, custody, or control of real property on the part of the local agency.

This is especially true here, as the School provides us with no support for its position that Mother's claim is properly construed as one for negligent supervision. Mother does not expressly plead, or plead by inference, a cause of action for negligent supervision, and, on the contrary, the allegations contained in the complaint all point to the negligent care of the real property as the cause of Jarrett's injuries. *See, e.g.,* Plaintiff's Complaint at ¶ 10 ("[Jarrett was] caused to sustain injuries as a result of a defective and dangerous condition of the premises caused directly by the actions/inactions of defendants (ie. [sic] gym without safety mats"); *id.* at ¶ 11 ("Defendants were negligent in maintaining the property that was within their care"); *id.* at ¶ 23 (offering various allegations regarding condition of real property).

Furthermore, the cases cited by the School address situations in which the property at issue merely facilitates injury caused by the acts of others, which are outside

of the Act's scope of liability. *See, e.g., Snyder v. Harmon*, 562 A.2d 307, 312 (Pa. 1989) (rejecting liability for PennDot's failing to warn public of pit and mining activities on adjacent property into which plaintiff jumped to avoid being hit by automobile). Nor does our decision in *Mascaro* provide the School relief. In *Mascaro*, a detainee in a detention center for juvenile criminal offenders escaped, and then, while burglarizing plaintiffs' home, the escapee raped the plaintiffs therein. The Court reasoned that the acts of others, rather than the acts of the local agency or its employees, are excluded from the general immunity section, noting that, "[o]n this basis alone, we must conclude that any harm that others cause may not be imputed to the local agency or its employees." *Mascaro*, 523 A.2d at 1124. The *Mascaro* Court continued that the real estate exception has "consistently been held to be unavailable to those whose claim of negligence consists of a failure to supervise the conduct of students or persons adequately." *Id.* Based upon this tenet, the Court held that the real estate exception may be applied only where it is alleged that "the artificial condition or defect of the land *itself* causes the injury, not merely when it facilitates the injury by the acts of others, whose acts are outside the statute's scope of liability." *Id.* (emphasis original).

Indeed, the cases cited by the *Mascaro* Court all involve allegations of acts of third parties and negligent conduct by supervisors, and not allegations of negligence regarding the condition of the real estate itself. *See Davies v. Barnes*, 503 A.2d 93 (Pa. Cmwlth. 1986) (student killed while joy riding with another student off school property after bringing automobile to school solely raising claims of negligent supervision); *Messina v. Blairsville-Saltsburg School District*, 503 A.2d 89 (Pa. Cmwlth. 1986 ) (cheerleader injured during practice in school yard raising claim of lack of supervision, not negligence regarding property); *Johnson v. City of Philadelphia*, 500 A.2d 520 (Pa. Cmwlth. 1985) (where intruders assaulted basketball player at city facility, allegations of failure to provide safe

conditions, including trained security personnel); *Acker v. Spangler*, 500 A.2d 206 (Pa. Cmwlth. 1985) (failure to supervise claim, and not real property defect, when table pulled out from under plaintiff); *Usher v. Upper St. Clair School District*, 487 A.2d 1022 (Pa. Cmwlth. 1985) (chemistry experiment accident involved allegations of teacher failing to control area of experiment, not control of real estate); *Robson v. Penn Hills School District*, 437 A.2d 1273 (Pa. Cmwlth. 1981) (claim of negligent supervision where student hit in eye by fellow student throwing pencil after teacher left classroom); *Wimbish v. School District of Penn Hills*, 430 A.2d 710 (Pa. Cmwlth. 1981) (claim involved failure to train staff to give prompt medical attention, not defect of real property).[5]  Finally, to the extent there is any ambiguity regarding the breadth of *Mascaro*, we clarified its import in our later decision in *Grieff*, where we explained that "[w]e intended *Mascaro* and its progeny to apply in similar cases *where third parties cause the harm*."  *Grieff,* 693 A.2d at 197 (citing *Crowell v. City of Philadelphia*, 613 A.2d 1178 (Pa. 1992)) (emphasis added).

Accordingly, our decision in *Mascaro*, and the cases relied upon therein, are plainly distinguishable from the situation *sub judice*, where the School's unprotected concrete gym wall directly caused the alleged injury, and its condition did not merely facilitate an injury caused by the act of others (i.e., third parties).  Again, Mother plainly alleges that the School's negligent care of the real property caused Jarrett's injuries.  As such, we hold that, not only did Mother not raise a claim of negligent supervision in her complaint, but that, even if she did, raising such a claim does not bar application of the real property exception to an independent claim directed to the negligent care of real property.

---

[5] Furthermore, although it is the focal point of much of the parties' advocacy, we believe that the Commonwealth Court's decision in *Wilson*, *supra* — in which there was no indication that plaintiffs proffered a claim expressly asserting negligent care of the stairs on which the field hockey player fell, but, rather, focused on the negligent supervision of the players — falls comfortably in the case law set forth above.

In conclusion, we hold that, pursuant to the plain language of the Act, a claim that a local agency failed to pad a gym wall constitutes an assertion of an act of negligence by a local agency concerning the care, custody, and control of real property, and, thus, falls under the real property exception to governmental immunity. Additionally, we find that Mother did not raise a claim of negligent supervision, but, regardless, we conclude raising such a claim does not act as a bar to application of the real property exception to independent allegations that go directly to the negligent care of real property resulting in injury. The order of the Commonwealth Court is affirmed.

Chief Justice Saylor and Justices Baer, Donohue, Dougherty and Mundy join the opinion.

Justice Wecht files a concurring opinion.