IN THE COMMONWEALTH COURT OF PENNSYLVANIA

East Coast Vapor LLC,                    :
                                         :
                    Petitioner           :
                                         :
          v.                             : No. 487 F.R. 2022
                                         : Argued:  November 5, 2025
Commonwealth of Pennsylvania,            :
                                         :
                    Respondent :


BEFORE:    HONORABLE RENÉE COHN JUBELIRER, President Judge
           HONORABLE PATRICIA A. McCULLOUGH, Judge
           HONORABLE ANNE E. COVEY, Judge
           HONORABLE MICHAEL H. WOJCIK, Judge
           HONORABLE LORI A. DUMAS, Judge
           HONORABLE STACY WALLACE, Judge
           HONORABLE MATTHEW S. WOLF, Judge


OPINION BY JUDGE WOJCIK                       FILED:  April 24, 2026


          East Coast Vapor LLC (East Coast) petitions for review from an order

of the Board of Finance and Revenue (Board) denying its petition for review of tax

assessments under the Tobacco Products Tax Act (TPTA or Act).[1]  Specifically, East

Coast asserts it was taxed in error on sales of custom vaping blend e-liquids.  For the

reasons that follow, we reverse.

          East Coast currently operates a retail vaping store located in Harrisburg,

Pennsylvania where it produces custom vaporizer blends (or "custom blend e-

---

[1] Act of March 4, 1971, P.L. 6, added by Section 18 of the Act of July 13, 2016, P.L.
526, 72 P.S. §§ 8201–A–8234–A.  The General Assembly enacted the TPTA in 2016, creating a
new Article XII-a within the Tax Reform Code of 1971 (Tax Reform Code), Act of March 4, 1971,
P.L. 6, *as amended*, 72 P.S. §§7101-10004.

liquid") for sale to customers. Joint Stipulation, ¶1. On November 1, 2021, the Department of Revenue (Department) mailed six assessments for the period October 1, 2018, through February 28, 2019, and August 1, 2021, through August 31, 2021, assessing "Other Tobacco Products [(OTP)]" tax, penalties and interest under the Act. Thereafter, on December 7, 2021, the Department mailed an assessment for the period covering September 1, 2021, through September 30, 2021, also assessing OTP taxes penalties and interest under the Act.

East Coast filed an appeal of the assessments with the Board of Appeals (BOA), arguing that the assessments were improper and violated the plain language of the TPTA. East Coast further argued that the assessments were improperly calculated as they were based on the sales price of the custom blend e-liquids sold to customers rather than the individual purchase price of the ingredients used to make the e-liquids.[2] East Coast maintained that this contradicted the Department's website which indicates that the OTP tax is to be imposed on the purchase price of the individual ingredients used to make the custom blend.[3] Finally, East Coast argued that the assessments violated the Pennsylvania and United States Constitutions.

---

[2] E-liquid consists of vegetable glycerin, propylene glycol, water, and artificial flavoring and ordinarily contains nicotine. Joint Stipulation, ¶6. East Coast purchases vegetable glycerin, propylene glycol, water, artificial flavoring, and nicotine to be mixed in-store at its Harrisburg location for the creation of custom blend e-liquid for in-store consumers. *Id.*, ¶7.

[3] In this regard, Paragraph 12 of the Joint Stipulation provides:

> The [Department's] "Customer Support" website sets forth that the [TPTA] tax for custom vaporizer blends is calculated using the purchase price of the individual ingredients, i.e., water, artificial flavoring, vegetable glycerin and propylene glycol. https://revenue-pa.custhelp.com/app/answers/detail/a_id/3660 (Q: "If I do custom vaporizer blends for my customers in store, how do I calculate the tax?" A: "The tax is on the purchase price of the ingredients."); (*see*

**(Footnote continued on next page…)**

2

In a May 19, 2022 decision, the BOA denied the petition. The BOA found East Coast's arguments to be without merit, noting that the custom blends constitute a taxable liquid or substance placed in or sold for use in an electronic cigarette per Section 1201-A of the TPTA, 72 P.S. §8201-A. The BOA further found that per Section 1202-A(b) of the TPTA, 72 P.S. §72 P.S. §8202-A(b), if no OTP tax was collected by the seller from the retailer, the tax is imposed on the retailer at the time of the purchase. As to East Coast's constitutionality arguments, the BOA stated that it did not have jurisdiction to review such arguments.

On further appeal, the Board concluded that East Coast had not established that the transactions were exempt from OTP tax. To the extent that East Coast argued that the assessments were invalid and violative of the plain language of the TPTA for assessing tax on the sale of custom blend e-liquid to consumers, the Board found the argument to be meritless. Section 1202-A(b) of the TPTA states that for a retailer, if no OTP tax was collected by the seller from the retailer, the tax is imposed on the retailer at the time of purchase.

Insofar as East Coast argued that the assessments were improperly calculated because they were based on the sales price of the custom blend e-liquids sold to customers rather than the individual purchase price of the ingredients used to make the e-liquids, the Board found this argument to be without merit. East Coast had not provided sufficient evidence to show that the Department erred in assessing tax on the sale of custom blend e-liquid rather than each of the individual ingredients. The Board found that the custom blend e-liquids qualified as "a liquid or substance

---

*also* Petition for Review, Exhibit D). Prior "Revenue Information" set forth the same guidance. Exhibit C is a true and correct copy of the "Revenue Information."

Joint Stipulation, ¶12.

placed in or sold for use in an electronic cigarette" and were therefore taxable per Section 1201-A of the TPTA.

Finally, to the extent that East Coast challenged the validity and/or constitutionality of the statutes at issue, the Board held that it could not decide whether a Pennsylvania statute is unconstitutional. *See Parsowith v. Department of Revenue*, 723 A.2d 659 (Pa. 1999).

East Coast now appeals to this Court.[4] At the outset, East Coast argues that under the plain language of the TPTA, it is not required to remit a 40% tax on the sale of custom blend e-liquid to *in-store consumers*, as opposed to retailers or wholesalers. East Coast maintains that under a plain reading of Section 1202-A(a.1) of the TPTA, "[a] tobacco products tax is imposed on the dealer or manufacturer at the time the electronic cigarette *is first sold to a retailer*[.]" 72 P.S. §8202-A(a.1) (emphasis supplied). East Coast believes that the plain language of this Section reflects that the law "ONLY applies when the tobacco product is first sold to a *retailer*—not an in-person consumer." East Coast's Brief at 16 (emphasis in original).

East Coast notes that it purchases taxable "electronic cigarettes" from licensed wholesalers who are responsible for collecting the TPTA tax. East Coast separately purchases water, vegetable glycerin, artificial flavoring, nicotine and propylene glycol (hereinafter, ingredients) to be mixed in-store for the creation of custom blend e-liquid to be sold to in-store/non-retail/non-wholesale consumers. East Coast does *not* sell custom blend e-liquid to other retailers or wholesalers. Despite the plain language of the TPTA providing that the TPTA tax only applies

___

[4] This Court's review of an appeal from the Board is *de novo*. *Kelleher v. Commonwealth*, 704 A.2d 729 (Pa. Cmwlth. 1997). However, a stipulation of facts is binding and conclusive on this Court. *Id.*

4

when an "electronic cigarette" is sold to a "retailer," the Department concluded that East Coast must collect the TPTA tax when the custom blend product is sold to an in-store consumer thereby creating, in effect, a 40% sales tax. Because East Coast does not sell its custom blends to a "retailer," East Coast argues that it should not be subject to the TPTA manufacturers tax based on its sale of custom e-liquid to in-store customers.

Citing Section 1928 of the Statutory Construction Act of 1972, 1 Pa.C.S. §1928, East Coast emphasizes that the provisions of the TPTA should be strictly construed. In construing the meaning of a statute, courts must "ascertain and effectuate the legislature's intent." *Office of Governor v. Donahue*, 98 A.3d 1223, 1237 (Pa. 2014); 1 Pa.C.S. §1921(a). "When the words of a statute are clear and unambiguous, there is no need to look beyond the plain meaning of the statute 'under the pretext of pursuing its spirit.' 1 Pa. C.S. §1921(b)[.]" *Id.* at 1237.

Per East Coast, the language of the TPTA reflects that the taxing statute applies when the tobacco product is sold to a *retailer—not the individual consumers* and non-retail, non-wholesale customers. East Coast maintains that the Department is enforcing the law against East Coast not as it was written by the legislature, but as it wishes it were written. Since East Coast was not subject to the TPTA manufacturers tax on the sale of custom blend e-liquid to in-store customers, by a plain reading of the statute, it was not required to collect and remit the 40% TPTA manufacturers tax based on the sale price of its custom blend e-liquid to consumers that were not retailers or wholesalers.

East Coast argues that to the extent the Department relied on Section 1202-A(b) as authority to support requiring East Coast to collect and remit 40% tax

5

on the sale of custom blends to in-store customers, it was in error.  This Section provides:

> **(b) Retailer.**--A retailer may only purchase tobacco products from a licensed dealer. If the tax is not collected by the seller from the retailer, the tax is imposed on the retailer at the time of purchase at the same rate as in subsections (a) and (a.1) *based on the retailer's purchase price of the tobacco products*. The retailer shall remit the tax to the department.[5]

Section 1202-A(b) of the TPTA (emphasis added).  East Coast asserts that the Department fails to interpret this Section properly as it applies to when a retailer purchases a "tobacco product."[6]  East Coast is not purchasing a "tobacco product"

---

[5] This Section of the TPTA is confusing as it uses the terms "dealer" and "seller" interchangeably.  In practice, the "dealer" and the "seller" are the same entity.  The "dealer" becomes the "seller" when the tobacco product is first sold to the retailer.  To avoid confusion, we will refer to the entity as the "dealer/seller."

[6] Section 1201-A of the TPTA defines "tobacco products" as:

(1) Electronic cigarettes.

(2) Roll-your-own tobacco.

(3) Periques, granulated, plug cut, crimp cut, ready rubbed and other smoking tobacco, snuff, dry snuff, snuff flour, cavendish, plug and twist tobacco, fine-cut and other chewing tobaccos, shorts, refuse scraps, clippings, cuttings and sweepings of tobacco and other kinds and forms of tobacco, prepared in such manner as to be suitable for chewing or ingesting or for smoking in a pipe or otherwise, or any combination of chewing, ingesting or smoking.

(4) The term does not include:

(i) Any item subject to the tax under section 1206 [72 P.S. §8206 (relating to an excise tax on the sale or possession of

**(Footnote continued on next page…)**

when it purchases the ingredients. In addition, Section 1202-A(b) has no application to the sale of custom e-liquid to non-retailers and non-wholesalers when read in conjunction with Section 1202-A(a.1). Per East Coast, Section 1202-A(b) applies when the "tobacco product" is "first sold to a retailer," not when it is sold to an in-store customer. East Coast contends that once the custom blend is created and sold to an in-store customer, there is only a retailer's sale price—which is not subject to the TPTA. In other words, no tax is owed unless the custom blend/"tobacco product" is purchased by *another retailer or wholesaler*.

The Commonwealth responds that it is undisputed that East Coast is a manufacturer and dealer/seller of a taxable tobacco product—custom blended e-liquid. The TPTA imposes criminal sanctions for the sale or possession of untaxed tobacco products. Section 1207-A(a) of the TPTA, 72 P.S. §8207-A(a). Yet, East Coast argues that this Court should interpret the TPTA in a way that allows it to manufacture and sell tobacco products entirely free of tax. The Commonwealth contends that the TPTA is structured to ensure that tax is collected and remitted on all tobacco products in Pennsylvania. East Coast cannot avoid the tax simply by structuring its business to sell directly to in-store customers.

The Commonwealth explains the taxing structure as follows. The OTP tax is imposed on a tobacco dealer/seller or manufacturer "at the time the electronic cigarette is first sold to a retailer in this Commonwealth" at the rate of 40% of the purchase price. Section 1202-A(a.1) of the Act. The dealer/seller must collect the

---

cigarettes within the Commonwealth at the rate of 13 cents per cigarette)].

    (ii) Cigars.

72 P.S. §8201-A.

tax from the retailer and remit it to the Department. A retailer may only purchase tobacco products from a licensed dealer/seller. If dealer/seller does not collect the tax, the tax is imposed on the retailer at the rate of 40% of the purchase price of the electronic cigarettes, and the retailer is responsible for remittance of the tax. Section 1202-A(b) of the Act. In turn, "electronic cigarette" is defined as:

> (1) An electronic oral device, such as one composed of a heating element and battery or electronic circuit, or both, which provides a vapor of nicotine or any other substance and the use or inhalation of which simulates smoking.
>
> (2) The term includes:
>
> > (i) A device as described in paragraph (1), notwithstanding whether the device is manufactured, distributed, marketed or sold as an e-cigarette, e-cigar and e-pipe or under any other product, name or description.
> >
> > (ii) *A liquid or substance placed in or sold for use in an electronic cigarette.*

Section 1201-A of the Act (emphasis supplied).

The Commonwealth notes that there are important public policy purposes behind the TPTA; namely, the protection of public health, particularly that of children by deterring the use of products that contain nicotine. It is with these policy objectives in mind that the legislature "enacted a statutory scheme that ensures someone is responsible for paying the [OTP tax]." Commonwealth's Brief at 16.

The Commonwealth argues that East Coast's claim that it can sell tobacco products in Pennsylvania tax-free because there is no "first sale" to a retailer contradicts the plain language of the TPTA, undermines legislative intent, and

8

exposes East Coast and its customers to criminal liability. The Commonwealth contends that East Coast's customers are "retailers" as defined in the statute. The Commonwealth maintains that the term "retailer" is "broadly defined to include a person that buys tobacco products and is not a licensed wholesaler." Department's Brief at 17.

The Commonwealth emphasizes that the objective of statutory construction is "to ascertain and effectuate the intention of the General Assembly." 1 Pa.C.S. §1921(a). Further, every statute "shall be construed, if possible, to give effect to all of its provisions." *Id.* Here, the Commonwealth asserts, the legislature intended to impose the OTP tax on all sales of tobacco products and intended a licensee to be responsible for the collection and remittance of the tax. Where, as here, a manufacturer assumes the role of "dealer," as East Coast does, that manufacturer's customer meets the statutory definition of "retailer." Commonwealth's Brief at 18.[7]

Finally, the Commonwealth asserts, even if East Coast does not collect tax from its customers, it is still liable for OTP tax pursuant to Section 1202-A(b). Contrary to East Coast's assertion that Section 1202-A(b) only applies when a retailer purchases a "tobacco product," the Commonwealth maintains that the statute applies when there "'is no tax collected by a seller,' which is exactly what occurs

_____

[7] In the alternative, the Commonwealth argues that in order for East Coast to comply with the statutory scheme, it must be selling to a retailer. Here, the retailer is either East Coast's in-store customer or East Coast itself. If this Court declines to find that East Coast's customers are retailers, the Commonwealth asks us to conclude that a transfer takes place between East Coast as a manufacturer and East Coast as a retailer. In that case, the purchase price of the product is the "total value" of the e-liquid. Section 1202-A of the Act (defining "Purchase price" as "the total value of anything paid or delivered"). We are not inclined to adopt this tortured interpretation of an unambiguous statute.

9

when East Coast makes a sale to an in-store customer without collecting tax."
Commonwealth's Brief at 21.

Based on our review of this matter and the arguments of the parties, we conclude that the Commonwealth advances a strained and impracticable position. The Pennsylvania Supreme Court has explained that where, as in this case, the issue

> involves the interpretation of a statute, we necessarily begin our analysis by considering the Statutory Construction Act. The objective of all interpretation and construction of statutes is to determine and effectuate the intention of the legislature. *Id.* at §1921(a). The best indication of the General Assembly's intent is the plain language of the statute. When the words of a statute are clear and unambiguous, we may not look beyond the plain meaning of the statute "under the pretext of pursuing its spirit." 1 Pa. C.S. §1921(b). Consequently, only when the words of a statute are ambiguous should a court seek to ascertain the intent of the General Assembly through consideration of the various factors found in Section 1921[(c)] of the Statutory Construction Act. 1 Pa. C.S. §1921(c) (setting forth various considerations to be employed to discern the intent of the legislature)[.]

*Brewington v. City of Philadelphia*, 199 A.3d 348, 354-55 (Pa. 2018) (citations omitted).

Section 1202-A(a.1) of the TPTA expressly provides that the 40% tax on electronic cigarettes is to be imposed "at the time the electronic cigarette is first sold to a *retailer* in the Commonwealth." (emphasis added). This language is unambiguous: the tax applies upon the first sale to a retailer and *not to individual, in-store customers*. We agree with the Commonwealth that the plain language of the TPTA reflects the legislature's intent that tax be collected and remitted on all tobacco products in the Commonwealth. Nevertheless, to the extent the Commonwealth maintains that East Coast customers who purchase custom blends

10

are "retailers" as that term is defined in the Act, this argument is absurd. The TPTA defines a "retailer" as:

> A person that purchases or receives tobacco products from any source for the purpose of sale to a consumer, or who owns, leases or otherwise operates one or more vending machines for the purpose of sale of tobacco products to the ultimate consumer. The term includes a vending machine operator or a person that buys, sells, transfers or deals in tobacco products and is not licensed as a tobacco products wholesaler under this article.

72 P.S. §8201-A. The words of this Section are clear and unambiguous: anyone who *sells tobacco products directly to consumers* (including through vending machines) and is not a licensed wholesaler is considered a retailer. Simply put, a consumer who buys a custom blend e-liquid from East Coast is purchasing it only for personal use, not to resell it to anyone else.

The Commonwealth's goals of taxing all tobacco products and protecting public health are admirable; however, we agree with East Coast that the Commonwealth is enforcing the Act as it wishes it had been written, not as it is actually written. As this Court observed in *Uninsured Employers Guaranty Fund v. Aguilar*, 344 A.3d 1162 (Pa. Cmwlth. 2025):

> Notably, "[w]e are constrained . . . to apply statutory language enacted by the legislature rather than speculate as to whether the legislative spirit or intent differs from what has been plainly expressed." *Commonwealth v. Bursick*, 584 A.2d 291, 293 (Pa. 1990). Moreover, as a matter of statutory interpretation, while we are "admonished to listen attentively to what a statute says[;] [we] must also listen attentively to what it does not say." *Kmonk-Sullivan v. State Farm Mu[tual] Auto[mobile] Ins[urance] Co.*, 788 A.2d 955, 962 (Pa. 2001) (quoting Felix Frankfurter, *Some Reflections on the Reading of Statutes*, 47 Colum. L.Rev. 527, 536 (1947)). Courts may not supply terms in a statute that have been omitted

11

> because "[i]t is not our role . . . to engage in judicial legislation and to rewrite a statute in order to supply terms which are not present therein." *In re Nov*[*ember*] *3, 2020 General Election*, 240 A.3d 591, 611 (Pa. 2020).

*Id.* at 1167.

The facts of this case reflect that East Coast's business model exploits a loophole in the TPTA. The proper way for the Commonwealth to address this is by the General Assembly amending the Act, not by asking this Court to adopt a distorted reading of its plain and unambiguous language. Because we agree with East Coast that the Department's assessments were improper and violated the plain language of the TPTA, the Board's order is reversed.[8]

_____
MICHAEL H. WOJCIK, Judge

---

[8] In light of our holding, we need not address East Coast's remaining issues on appeal. It is well settled that when a case raises both constitutional and nonconstitutional issues, a Court should not reach the constitutional issue if the case can be decided on nonconstitutional grounds. *Roman Catholic Archdiocese of Philadelphia v. Pennsylvania Human Relations Commission*, 548 A.2d 328, 331 (Pa. Cmwlth. 1988).

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

East Coast Vapor LLC,       :
                               :
            Petitioner    :
                               :
        v.              : No. 487 F.R. 2022
                               :
Commonwealth of Pennsylvania,   :
                               :
           Respondent :

## **O R D E R**

AND NOW, this 24th day of April, 2026, the order of the Board of Finance and Revenue denying East Coast Vapor LLC's petition for review of tax assessments is REVERSED.

Unless exceptions are filed within 30 days pursuant to Pa.R.A.P. 1571(i), this order shall become final.

_____
MICHAEL H. WOJCIK, Judge