J-A29026-19

2020 PA Super 7

| JESSICA L. JONES | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| MARIE H. PLUMER, ADMINISTRATRIX | : | No. 747 WDA 2019 |
| OF THE ESTATE OF JAMES J. STOVER | : | |

Appeal from the Order Entered, May 8, 2019,
in the Court of Common Pleas of Venango County,
Civil Division at No(s): 2018-00015.

BEFORE:   BENDER, P.J.E., KUNSELMAN, J., and PELLEGRINI, J.*

OPINION BY KUNSELMAN, J.:                    **FILED JANUARY 15, 2020**

Jessica Jones, appeals from the order granting summary judgment to Marie H. Plumer (the administratrix of the Estate of James J. Stover).   Ms. Jones initiated this action, because she fell down the stairs at a property she leased from Mr. Stover and injured her wrist.   Based on the Dead Man's Act, the trial court properly held that Ms. Jones could not testify against her now-deceased landlord's estate.   In addition, the administratrix did not waive the Act's protections, nor has Ms. Jones produced any competent evidence to prove what caused her to fall.   We therefore affirm.

Ms. Jones was a tenant at Mr. Stover's property.   She claims she tripped on the premise's poorly maintained steps, which led down from a porch on the side of the building.   The steps had no railing, and when Ms. Jones was about

_____

* Retired Senior Judge assigned to the Superior Court.

to walk down the steps, she alleges that "the heel of her shoe caught the top of the riser [which] improperly projected beyond the top-step nosing." Complaint at 2. Extending her arm to break her fall, Ms. Jones struck her hand on the concrete below and broke several bones. Surgery was needed to repair the fractures.

The landlord died about a year later, before Ms. Jones filed her lawsuit, so she sued the administratrix of Mr. Stover's estate to recover for her injuries. In her Complaint, Ms. Jones alleged that Mr. Stover knew his front steps were unsafe but neglected to repair them in a reasonable and timely manner. The administratrix eventually moved for summary judgment.

For purposes of that motion, the parties agreed that the property's steps were poorly maintained, that Mr. Stover knew of the defects, and that he failed to make the requisite repairs. Thus, whether Ms. Jones had produced enough evidence to give rise to factual questions on the issues of duty and breach was not in dispute for purposes of summary judgment.

Instead, the administratrix attacked Ms. Jones' lack of evidence of causation. She claimed that the only witness to the fall — *i.e.*, Ms. Jones — was incompetent to testify regarding causation under the Dead Man's Act and this left Ms. Jones unable to prove that the negligently maintained stairs caused her to fall. The trial court agreed and granted summary judgment. This timely appeal followed.

Ms. Jones presents one issue for our review:

> Whether the lower court erred when it granted [the administratrix's] Motion for Summary Judgment, applying the Dead Man's Act to bar the testimony of [Ms. Jones], and finding that there were no other means through which [Ms. Jones] might establish the element of causation, in a premises liability claim?

Ms. Jones' Brief at 5.  Ms. Jones then argues that issue as three sub-issues in her brief, which we have reordered for ease of disposition:

> 1. The trial court committed reversible error when it broadly applied the Dead Man's Act to entirely bar the testimony of [Ms. Jones'], including testimony as to causation.
>
> 2. The trial court committed reversible error when it found that [the administratrix] had not waived the protections of the Dead Man's Act, and that thus the Dead Man's Act barred [Ms. Jones] from testifying (rendering her unable to prove the element of causation).
>
> 3. The trial court committed reversible error when it found that the statements of [Ms. Jones'] medical providers were insufficient to permit a reasonable jury to find for [Ms. Jones] on the issue of causation.

Ms. Jones' Brief at 11, 19, 23.

When reviewing a trial court's order granting summary judgment, which awards a party judgment as a matter of law, our scope of review is plenary, and our standard of review is *de novo*.  **See Summers v. Certainteed Corp.**, 997 A.2d 1152 (Pa. 2010).

Here, the trial court concluded that Ms. Jones' evidence at the close of discovery was legally insufficient to make a *prima facie* case of negligence against her late landlord.  The "elements of negligence are:  a duty to conform

to a certain standard for the protection of others against unreasonable risks; the defendant's failure to conform to that standard; a causal connection between the conduct and the resulting injury; and actual loss or damage to the plaintiff." ***Brewing for Brewing v. City of Philadelphia***, 199 A.3d 348, 355 (Pa. 2018).

The court found the Dead Man's Act prohibited Ms. Jones from testifying about the cause of her fall. The Dead Man's Act provides, in relevant part, "where any party to a thing . . . is dead . . . and his right thereto or therein has passed . . . to a party . . . who represents his interest . . . any surviving or remaining party to such thing . . . shall [not] be a competent witness to any matter occurring before the death of said party." 42 Pa.C.S.A. § 5930. Under this Act, "surviving parties who have an interest which is adverse to [the] decedent's estate are disqualified from testifying as to any transaction or event which occurred before [the] decedent's death." ***Hera v. McCormick***, 625 A.2d 682, 688 (Pa. Super. 1993).

*A.     Applicability of Dead Man's Act to Ms. Jones' Testimony*

Ms. Jones claims that the trial court should not have deemed her an incompetent witness under the Dead Man's Act. She argues her case does not satisfy the legislative intent for the Act and "that the purpose of the Act must be kept in the forefront of a court's mind as that determines its applicability to a particular case." Ms. Jones' Brief at 12. Because there were no witnesses to her fall, Ms. Jones argues that Mr. Stover would not have been able to testify as to causation, if he were still alive. Thus, in her view, Mr.

Stover's death did not weaken the defense of this case. In support of her position, Ms. Jones relies upon **Stathas v. Wade Estate**, 380 A.2d 482 (Pa. Super. 1976) (*en banc*).

First, we examine Ms. Jones' belief that the legislature's purpose for the statute should control our interpretation of the Dead Man's Act. This claim has no support in law or the precedents of this Commonwealth. Our General Assembly has commanded that "when the words of a statue are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit." 1 Pa.C.S.A. § 1921(b). **See also**, **e.g.**, **Chanceford Aviation v. Chanceford Twp. Bd. of Supervisors**, 923 A.2d 1099, 1104 (Pa. 2007) (accord). Only if "the words of a statute are not explicit [may we ascertain] the intention of the General Assembly . . . by considering, among other matters . . . the mischief to be remedied." 1 Pa.C.S.A. § 1921(c)(3).

Ms. Jones' argument asks us to jump directly to the second step of statutory construction without acknowledging the first. She never claims — much less establishes — an ambiguity in the language of the Dead Man's Act that would require us to examine the General Assembly's purpose for enacting the statute. We may not ignore the express words of the Act, simply because Ms. Jones' circumstances may not have been the precise case the legislature had in mind when it authored the statute. Neither the General Assembly nor the Supreme Court of Pennsylvania licenses this Court to disregard the plain language of a statute in the name of vindicating the act's intended purpose, for the words themselves are the best evidence of such intent.

The language of the Act directly applies to this tort action. The event of Ms. Jones falling down the steps at Mr. Stover's property is "a thing" for purposes of 42 Pa.C.S.A. § 5930. Mr. Stover "is dead . . . and his right thereto or therein has passed . . . to a party . . . who represents his interest," *i.e.*, the administratrix of his estate. **Id.** Thus, Ms. Jones, as a "surviving or remaining party to [that] thing . . . [is not] a competent witness to any matter occurring before the death of said party." **Id.** What caused her to fall on the steps is such a matter. As one commentator succinctly explained, "In a personal injury action involving a decedent's estate, the surviving party is not a competent witness to the circumstances of [her] injury, for the decedent's estate is in no position to refute the surviving party's testimony concerning the decedent's liability for the injuries." Mark I. Bernstein, PENNSYLVANIA RULES OF EVIDENCE WITH COMMENTS & ANNOTATIONS (2011 Ed.) § 601[9] at 398.

The fact that Mr. Stover did not witness "the thing" in issue is not one of the three exceptions the legislature authorized in the statute. **See** 42 Pa.C.S.A. § 5930; and Bernstein, **supra** at 400 (listing the exceptions to the Dead Man's Act: (1) when the "litigation is by or against the deceased's partner or partners, joint promisors, or joint promisees"; (2) "[i]n a possessory action against several defendants, a defendant who disclaims title and pays costs or security becomes competent to testify"; and (3) "an inquiry into the testamentary disposition of property or into property owned by the deceased . . . ."). Given that none of those legislative exceptions applies, the trial court correctly opined as follows:

three conditions . . . must exist before a surviving party or witness is disqualified [from testifying under the Dead Man's Act]: (1) the deceased must have had an actual right or interest in the matter at issue, (2) the interest of the witness must be adverse, and (3) the right of deceased must pass to a party of record who represents the deceased's interest. **Olson v. North American Indus. Supply, Inc.**, 658 A.2d 358 (Pa. Super. 1995) . . . In the case *sub judice*, we find that [the administratrix] has met these three conditions to disqualify [Ms. Jones] from testifying. For the first requirement, [Mr. Stover] was the owner of the property where [Ms. Jones'] accident occurred, which would have made him personally [liable], and now makes his estate currently liable for any recovery by [Ms. Jones]. The second requirement is met, because [Ms. Jones'] interest is adverse by virtue of the present posture of the two parties. The third element is met, because the [administratrix] in this case [represents Mr. Stover's] estate.

Trial Court Opinion, 5/8/19, at 4-5 (some citations omitted).

We adopt this well-reasoned analysis as our own. The language of the Dead Man's Act therefore bars Ms. Jones' testimony on what caused her to fall down Mr. Stover's steps.

Because we agree with the trial court that Ms. Jones' testimony comes within the wording of the statute, we now consider her claim that, under **Stathas v. Wade Estate**, **supra**, she is nevertheless competent to testify as to causation.

**Stathas** involved a two-car collision, where Mr. Wade rear-ended the Stathases. A few months later, he died, and the Stathases sued the administratrix of his estate. At trial, they proved his negligence caused their harm, but the trial court barred their testimony on the extent of the damages he caused them under the Dead Man's Act.

This Court, sitting *en banc*, unanimously reversed.[1]  We held that the Dead Man's Act did not render the Stathases incompetent witnesses on the extent of their damages and explained:

> The admission of [the Strathases'] testimony on damages would not have been inconsistent with the purpose of the Dead Man's Act.  Wade's estate was in no worse a position to refute the testimony than Wade himself would have been.  As the Supreme Court of Nevada noted in a similar case:  "The [plaintiff's] testimony as to her medical bills, her pain and suffering, and matters of like nature which the decedent could not have contradicted of his own knowledge, was clearly admissible and the rejection of such testimony was prejudicial error."  *Zeigler v. Moore*, 75 Nev. 91, 335 P.2d 425, 430 (1959).

*Stathas*, 380 A.2d at 483 (some punctuation omitted).

The *Stathas* Court's reliance on the purpose of the Act and the fact that Wade's Estate was in no worse a position to refute the Stathases' testimony appears to permit Ms. Jones to testify.  Here, the administratrix of Stover's Estate is no worse off than Mr. Stover would have been to refute Ms. Jones' version of the fall, had he not died.  Indeed, both parties agree Mr. Stover was not present when the thing in controversy occurred.  *See* Administratrix's Motion for Summary Judgement at 5, ¶ 22.

However, we expressly limited our holding in *Strathas* to testimony on *damages*.  "We therefore hold . . . that the phrase in the Dead Man's Act, 'any matter occurring before the death of the other party', does not apply to testimony pertaining to the extent of damages, when the testimony is

_____

[1] Two judges concurred in result.

- 8 -

***unrelated to the issue of negligence*.**  ***Stathas*** at 483-84 (emphasis added).

Here, Ms. Jones asks us to carve out an exception for testimony not related to the extent of her damages, but instead related directly to one of the elements of negligence.  Ms. Jones would testify that Mr. Stover's breach of his duty caused her harm.  Hence, the testimony at issue goes to the heart of her negligence claim.

In the forty years since ***Stathas***, we have never extended it to allow testimony on an element of negligence.  Were we to do so, we would judicially repeal the Dead Man's Act in any tort action where the deceased defendant did not personally witness the thing in controversy.  Such a revision to a statute of this Commonwealth must come from the General Assembly, not this Court.

Accordingly, we reject Ms. Jones' contention that the trial court's application of the Dead Man's Act was overly broad.  On the contrary, the trial court properly applied the statute as the General Assembly has authored it. This sub-issue therefore affords Ms. Jones no appellate relief.

B.    *Wavier of the Dead Man's Act*

Ms. Jones also contends the administratrix has waived the protection of the Dead Man's Act, because she attached Ms. Jones' September 5, 2017 demand letter to the Motion for Summary Judgment.   Ms. Jones asserts the administratrix misused a "correspondence from [Ms. Jones'] counsel which was intended to be (and was clearly marked as) for settlement purposes only."

Ms. Jones' Brief at 24. She contends that this "use of the correspondence as evidence of [her] arguments and position" demonstrates the administratrix "has essentially engaged in discovery." *Id.* Ms. Jones believes that making that correspondence a part of the record is "dragging to light the papers or evidence of the opposing party," *id.*, which this Court held waived the Dead Man's Act in *Perlis v. Kuhns*, 195 A.2d 156 (Pa. Super. 1963) (*en banc*).

*Perlis* was also a car-accident case, where the driver at fault died. The plaintiff sued the administrator of Kuhns' Estate. The administrator "filed interrogatories [including,] 'Describe in narrative form and in detail the events leading up to and immediately following the accident alleged in your complaint, including the manner in which the accident occurred and the purpose of the motor vehicle operation on that day.'" *Id.* at 157. The trial court refused to deem the plaintiff incompetent under the Dead Man's Act, because that interrogatory waived the protections of the Act. On appeal, we looked to several other jurisdictions that had faced similar scenarios and affirmed.

This Court explained that the taking of either a party's deposition or the sending of interrogatories waives the Act, because the administrator has used discovery to make the adverse party his own witness. We opined:

> The very use of depositions or interrogatories requires the adverse party to give testimony in a way sanctioned by the Pennsylvania Rules of Civil Procedure. These rules include written interrogatories as well as depositions. This is the equivalent of placing him on the witness stand. As stated in *Cox v. Gettys*, [156 P. 892 (Ok. 1916), *overruled* *Davis v. Davis*, 536 P.2d 915 (Ok. 1975)], and quoted by the

court below: "Any other construction of the statute would enable one party to search the conscience of his adversary, drag to light his private papers and other evidence, and then repudiate the result, if the experiment proved unsatisfactory."

*Perlis*, 195 A.2d at 158–59 (some citations omitted).

Contrary to Ms. Jones' contentions, however, nothing in *Perlis* extended that wavier principle to settlement letters. In such correspondence, one party willfully discloses information to her opponent uncompelled by any court processes or order.

Here, Ms. Jones voluntarily showed her hand by sending the September 5, 2017 letter. The administratrix never searched Ms. Jones' conscience by deposition, interrogatory, or any other means. She engaged in no discovery whatsoever, and she certainly did not make Ms. Jones a witness in this matter. We therefore agree with the trial court on this point as well.

Ms. Jones may not avoid the Dead Man's Act on waiver grounds.

C.    *The Medical Reports*

Finally, Ms. Jones contends that she has produced sufficient evidence to place the question of causation before a jury, even without her incompetent testimony on the issue. She believes that her "medical record is replete with statements outlining the mechanism of [her] injury . . . ." Ms. Jones' Brief at 22. She claims that:

> when viewed in its totality and combined with all other evidence, [her medical record] does adequately describe the cause of the injury, thereby creating a genuine issue of material fact. Moreover, the fact that the medical records specifically reference falling off steps without a railing, which

- 11 -

is one of the specific allegations in [Ms. Jones'] Complaint, provides clear and admissible evidence in this matter. Absent the lack of a railing . . . [Ms. Jones] would not have sustained the injuries she did.

*Id.*

We reject Ms. Jones' contention on two grounds.

First, her reliance upon the absence of a railing to prove causation of her injuries is misplaced. The lack of a hand railing, even when its absence violates a building code, is not proof of causation.

In ***Wisniewski v. Chestnut Hill Hospital***, 170 A.2d 595 (Pa. 1961), the Supreme Court of Pennsylvania held that the lack of a hand railing is not sufficient to prove fault on the part of the land owner without more. There, a pregnant women exited a hospital, missed a step, and tried to catch herself on the side of the steps without a railing. The trial court granted a compulsory nonsuit to the hospital on the issue of causation, and the Supreme Court affirmed. "The absence of a handrail on the right-hand side was not the proximate cause of plaintiff-wife's fall, and the violation of an ordinance or any negligence is not ground for recovery unless it was a proximate cause of plaintiff's injury." ***Wisniewski***, 170 A.2d at 596 (footnote omitted).

Thus, the absence of a hand railing does not establish causation on its own as Ms. Jones' brief implies. A plaintiff who falls down steps that lack a hand railing must still prove that the defendant's breach of a duty caused her to stumble in the first place.

Second, none of Ms. Jones' admissible evidence proves the causation she alleged in her Complaint. She alleged that "[o]n or about January 13, 2016, while [she] was attempting to walk from the porch onto the steps exiting the residence, the heel of her shoe caught the top of the riser causing severe bodily injuries." Ms. Jones' Complaint at 2.

Nothing in her medical records[2] indicates that Ms. Jones' heel caught on the negligently maintained riser of the top step. Ms. Jones' medical records are either silent on what caused her to fall, or they attribute it to a different source.

On the day she fell, Ms. Jones told emergency room staff that "she was walking outside on her steps when she ***slipped on ice*** . . . ." Exhibit C to Ms. Jones' Brief in Opposition to Motion for Summary Judgment at 1 (emphasis added). Rather than linking her fall to Mr. Stover's failure to keep the steps in a reasonably safe state of repair, Ms. Jones initially blamed the weather. If admitted at trial, this evidence would ***disprove*** her claim that Mr. Stover's poor maintenance of his steps caused her harm.

Two days later, Ms. Jones saw Dr. Robert M. Woods. His physician's assistant recorded only that Ms. Jones suffered "injuries 2 days ago by falling down stairs." Exhibit B to Ms. Jones' Brief in Opposition to Motion for Summary Judgment at 1. This statement cannot help a jury determine what

_____

[2] We assume for purposes of this appeal that these medical records would be admissible at trial as an exception to the hearsay rule.

- 13 -

caused that fall, because it merely confirms an undisputed fact – *i.e.*, that Ms. Jones fell down the steps.

Her final piece of evidence is equally unavailing. Ms. Jones offers the notes of her April 11, 2016 consultation with Dr. Fredrick R. Kruger. The doctor wrote, "she originally injured her left wrist by falling off the side of a set of steps at her house she was renting. There was no railing present on the steps, she states." Exhibit D to Ms. Jones' Brief in Opposition to Motion for Summary Judgment at 1. Like the medical record from her visit to Dr. Woods, this statement does not establish how Ms. Jones fell. Again, it proves only that she did. The jury would still need to guess why the fall occurred.

And, as explained above, under **Wisniewski**, **supra**, the doctor's note that the steps had no railing is legally insufficient to place the question of causation before the jury. The absence of a hand railing does not cause one to fall; its absence only makes it more difficult to catch oneself after the fall begins. The medical records do not prove Ms. Jones' theory of causation.

Thus, Ms. Jones' third sub-issue is also meritless.

Summary judgment affirmed.


Judgment Entered.

![signature]

Joseph D. Seletyn, Esq.
Prothonotary

- 14 -

J-A29026-19

Date:  1/15/2020