J-A29026-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| RICHARD MCCURDY AND SANDY MCCURDY, HUSBAND AND WIFE | : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellants | : : : : | |
| v. | : : : | |
| | : | No. 319 WDA 2021 |
| C&K INDUSTRIAL SERVICES INC., A CORPORATION OR OTHER SIMILAR BUSINESS ENTITY; GREYCOR INDUSTRIAL CONSTRUCTORS, INC., A CORPORATION OR OTHER SIMILAR BUSINESS ENTITY; UNITED STATES STEEL CORPORATION, A CORPORATION OR OTHER SIMILAR BUSINESS ENTITY | : : : : : : : : : | |

Appeal from the Order Dated February 18, 2021
In the Court of Common Pleas of Allegheny County Civil Division at
No(s):  GD-14-001586,
GD-14-001586

BEFORE:  BENDER, P.J.E., BOWES, J., and PELLEGRINI, J.[*]

MEMORANDUM BY PELLEGRINI, J.:             **FILED: JUNE 28, 2022**

Richard McCurdy (McCurdy) and Sandy McCurdy (collectively,

Appellants) appeal from an order of the Court of Common Pleas of Allegheny

County (trial court) granting summary judgment to C&K Industrial Services,

Inc. (C&K) because the record was devoid of any disputed question of

_____

[*] Retired Senior Judge assigned to the Superior Court.

material fact with respect to Appellants' civil claims sounding in negligence.[1]

We affirm.

**I.**

Graycor Industrial Constructors, Inc. (Graycor)[2] was the general contractor for the construction of a new coke battery at U.S. Steel's Clairton Works. The construction of those flues for the new coke battery created a significant amount of dust and Graycor hired C&K to provide industrial vacuum trucks and hoses to assist in the removal of the dust. It supplied two trucks containing vacuum machines and flexible hoses that ran from the truck to the area several feet away to be vacuumed. (Deposition of James Ott, R. 139a.)[3] There, the hose was attached by C&K to a "Safety T."[4]

---

[1] Sandy McCurdy raised claims concerning loss of consortium. **See** Complaint, 5/13/14, at ¶¶ 68-70. However, these claims are derivative of Richard McCurdy's injuries. **Id**. at ¶ 70 ("By reasons of the injuries sustained by Richard McCurdy, Mrs. McCurdy has been and will be in the future deprived of his support, society, companionship, love, solace, consortium, services and more . . . ."). Accordingly, our analysis focuses upon negligence.

[2] While the caption states "Greycor," the correct spelling is "Graycor."

[3] For the convenience of the parties, we cite to the reproduced record.

[4] A "Safety T" is a piece of metal piping that has three openings and is shaped like an upside-down "T." The "Safety T" sits on the floor. A separate hose is connected to the opposite side of the inverted top of the "T." That piece of hose is then run over to the top of the flue to be vacuumed. The "leg" of the "T," sticking up from the ground, has a removable cover on it. When in place, the cover completes the vacuum. When removed, the cover breaks the vacuum and eliminates the suction. The cover could be removed to break the
*(Footnote Continued Next Page)*

Graycor employees vacuumed the flue and had complete control of and responsibility for the vacuuming process. (Graycor Letter of March 16, 2012, Randy Hynek, Safety Director of Graycor Services, R. 502a-504a.)

Graycor employed, among others, McCurdy as a bricklayer to construct and vacuum the flues. During safety training, all workers, including McCurdy, were informed that on occasion, there would be small static-electricity "shocks" from industrial vacuuming. To alleviate the shocks, U.S. Steel/Graycor electricians attached special green tags to the vacuum equipment to certify that the equipment had been properly grounded. If the "grounds" were not green-tagged, the equipment could not be used. To assist in the vacuuming of the materials, Graycor purchased and installed a two-inch-wide, 17-foot-long ridged polyvinyl chloride (PVC) pipe and attached it with duct tape to the end of the C&K hoses. The hoses were connected to and powered by a C&K vacuum that grounded the flexible hoses and allowed the workers to reach down into the deep flues to vacuum the dust out from above.

On February 7, 2012, McCurdy was vacuuming dust and other debris with the 17-foot PVC pipe purchased and installed by Graycor. While McCurdy was operating the vacuum, "a 17-foot bolt of lightning" traveling

---

suction in case of emergency, such as a piece of the worker's clothing being caught in the suction. (Deposition of James Ott, R. 148a-149a.)

"parallel" to the PVC pipe extension leapt from the chimney and struck him in the hands, blackening the ring and pinky fingers on each of his hands. He experienced immediate and intense pain. (Deposition of Richard McCurdy, R. 87a.) He was transported to a hospital and, following treatment, was released and assigned to light-duty.

To recover damages for his injuries, McCurdy brought suit against U.S. Steel, Graycor and C&K.[5] *See* Complaint, 5/13/14, at ¶¶ 24-38. As to C&K, McCurdy alleged that it had negligently designed, assembled, monitored and operated the vacuuming operation and failed to adequately warn users of the vacuuming system of the dangerous nature of the same. He further alleged C&K violated the industry safety practices, trade practices and standards of care which are generally required and accepted within the construction industry. McCurdy asserted that C&K had "acted negligently in permitting workmen to perform tasks at the work site in a manner which violated the industry safety practices, trade practices and standards of care which are generally required and accepted within the construction industry." *Id*. at ¶ 34. He alleged that as a result of his injuries, he could no longer work as a bricklayer because he was experiencing pain, numbness and

_____

[5] McCurdy's claims against both U.S. Steel and Graycor were ultimately settled and discontinued by leave of the trial court.

tingling in both hands and had pain radiating from his right hand into his arm.

## II.

After lengthy discovery, C&K filed a motion for summary judgment arguing that McCurdy had failed to establish a *prima facie* case of negligence because he had not offered any evidence or testimony that C&K breached any duty of care it owed to him or that C&K's performance and equipment on this job were in any way substandard. McCurdy responded that C&K breached its duty because it should have known that attaching PVC pipe to the vacuuming system was dangerous and posed a danger to the workers involved in the project.

The trial court granted summary judgment[6] and dismissed McCurdy's claims against C&K, finding that:

---

[6] As a general matter, summary judgment is only appropriate in "those cases where the record clearly demonstrates that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." ***Summers v. Certainteed Corp.***, 997 A.2d 1152, 1159 (Pa. 2010); ***see also*** Pa.R.C.P. 1035.2. Our standard of review in the context of summary judgment is well-established under Pennsylvania law:

> When considering a motion for summary judgment, the trial court must take all facts of record and reasonable inferences therefrom in a light most favorable to the non-moving party. In so doing, the trial court must resolve all doubts as to the existence of a genuine issue of material fact against the moving party, and, thus, may only grant summary judgment where the right to such judgment is clear and free from all doubt. On appellate review, then, an appellate court may reverse a grant of summary

*(Footnote Continued Next Page)*

> [McCurdy] present[ed] no reasonable theory as to how C&K was negligent in the use or the assembly of their equipment. The Plaintiffs allege no particular risk with said equipment and present no OSHA findings that would substantiate allegations of the same. To allow the [McCurdy] to proceed against this defendant would provide a jury empaneled with only enough information to guess or speculate as to what standard of care was possibly breached.

Trial Court Opinion, 8/10/20, at 11.

On March 4, 2021, Appellants filed a timely notice of appeal. [7] The trial court did not order Appellants to file a concise statement of errors complained

_____

> judgment if there has been an error of law or an abuse of discretion. But the issue as to whether there are genuine issues as to any material fact presents a question of law, and therefore, on that question our standard of review is *de novo*. This means we need not defer to the determinations made by the lower tribunals.

**Summers**, **supra** (cleaned up). We also note that "[t]o the extent that this Court must resolve a question of law, we shall review the grant of summary judgment in the context of the entire record." **Id**.

[7] On June 19, 2020, Appellants filed their first notice of appeal purporting to be from the trial court's April 17 and May 14, 2019 orders awarding summary judgment to C&K and denying Appellants' request for a determination of finality. However, an issue impacting appealability arose when C&K refused to consent to the discontinuance of the claims against U.S. Steel and Graycor. **See** Pa.R.C.P. 229(b)(1) ("[A] discontinuance may not be entered as to less than all defendants except upon the written consent of all parties or leave of court upon motion of any plaintiff or any defendant for whom plaintiff has stipulated in writing to the discontinuance."). Consequently, Appellants filed a motion seeking leave to discontinue its claims against U.S. Steel and Graycor. The trial court concluded it could not rule on the motion for discontinuance due to Appellants' pending appeal. **See** Order, 8/5/20, at 1; Pa.R.A.P. 1701(a) ("[A]fter an appeal is taken . . ., the trial court . . . may no longer proceed further in the matter."). On September 10, 2020, this Court quashed that appeal. Appellants responded by filing a second motion to discontinue its civil claims against U.S. Steel and Graycor. C&K filed a
*(Footnote Continued Next Page)*

of on appeal pursuant to Pa.R.A.P. 1925(b) in response to this second notice of appeal and refiled the Pa.R.A.P. 1925(a) opinion it had filed in the initial appeal.

Appellants raise two issues on appeal:

I.     Whether summary judgment was improperly granted by the trial court when the evidence of record shows that [C&K] negligently performed industrial vacuuming services by failing to safely design or assemble vacuuming system and/or failed to advise in the design and assembly of a vacuuming system that was dangerous as a static electric build-up was created within the pneumatic conveying transport or piping system which caused injury to McCurdy.

II.    Whether summary judgment was improperly granted by the trial court when the evidence of record shows that [C&K] negligently failed to suspend operation of the pneumatic conveying transport or piping system when workers were shocked in order to properly check that the entire transport system was adequately and properly grounded and therefore exposed McCurdy to a dangerous condition which caused his injury.

Appellants' Brief at 4 (cleaned up).  Although stated as separate claims, both issues essentially challenge the trial court's determination that the absence of evidence of negligence by C&K entitled it to summary judgment.  Accordingly, we will address these claims collectively.

_____

competing motion arguing that it would be prejudiced if a partial discontinuance was granted.  On February 24, 2021, the trial court filed orders granting Appellants' request for a partial discontinuance.  This appeal followed.

**III.**

Appellants contend that summary judgment was improperly granted because there is evidence in the record that,[8] if believed at trial, established that C&K violated its duty of care by negligently providing industrial vacuuming services that allowed static electricity to build up, causing McCurdy's injuries. They further argue that C&K negligently allowed the vacuuming to continue after several workers sustained a static shock before McCurdy was injured.

To make out a negligence claim, Appellants must establish: (1) a duty to conform to a certain standard for the protection of others against unreasonable risks; (2) the defendant's failure to conform to that standard; (3) a causal connection between the conduct and the resulting injury; and (4) actual loss or damage to the plaintiff. *Jones v. Plumer*, 226 A.3d 1037, 1039-40 (Pa. Super. 2020) (citing *Brewington for Brewington v. City of Philadelphia*, 199 A.3d 348, 355 (Pa. 2018)). The standard used for the protection of others is always one of "reasonable care," but the care which is reasonable to require varies with and is proportionate to the danger involved in the act. Put simply, "[t]he greater the danger, the greater the care which

---

[8] However, "[t]he burden of the non-moving party where summary judgment is requested is not the same as the burden during a trial of the issues, it need only be shown that there is a genuine issue as to any material fact." *Prince v. Pavoni*, 302 A.2d 452, 454 (Pa. Super. 1973).

must be exercised." **Stewart v. Motts**, 654 A.2d 535, 537 (Pa. 1995) (citing RESTATEMENT (SECOND) OF TORTS, § 298 comment b (1965)).

Taking this "heightened" duty of care together with certain provisions of the contract between Graycor and C&K, Appellants contend that C&K breached it duty of care because the contract places the onus on C&K to ensure that anyone working on Graycor's project is not injured using C&K's equipment. Under Pennsylvania law, "[a] party to a contract has two duties:  a contractual duty and a legal duty to act without negligence towards both the other party to the contract and third parties." **Weiser v. Bethlehem Steel Corp.**, 508 A.2d 1241, 1245 (Pa. Super. 1986) (collecting cases).

In the contract for services between Graycor and C&K, Graycor was identified as the "Contractor" and C&K was identified as the "Subcontractor." C&K agreed to "[p]rovide vacuum and other industrial services as directed." (Shortform Subcontract, R. 117a.)  C&K was also required to "provide the necessary competent supervision, labor, material, equipment, tools, facilities, and all other requirements for performing the below Work in accordance with the Subcontract documents." **Id.**

Appellants identify several contract provisions that they contend impose duties on C&K to require it to ensure that no one was injured when its vacuum truck and equipment was involved.  First, the "Safety & Health" provision contained in the Standard Terms and Conditions provides that:

> Contractor [Graycor] does not assume responsibility for Subcontractor's [C&K] construction means, methods, and

techniques in performing the Work. As an expert in its Work, [C&K] agrees, as to its **Work**, it is **(a) solely responsible for the prevention of accidents to its employees and its sub-subcontractors' employees** arising out of the performance of its Work, and (b) primarily responsible for the prevention of accidents to others who happen to be potentially exposed to hazards arising out of the Work as it is being performed.

*Id*. (emphasis added.)

Appellants contend that this provision, coupled with other provisions in the Safety and Work Rule Attachment,[9] imposed a duty of care on C&K because it was "primarily responsible for the prevention of accidents to others who happen to be potentially exposed to hazards arising out of the Work as it is being performed." *Id*. They argue that once it was known and obvious that several workers sustained a static shock during the vacuuming operation, C&K had a duty not to allow the vacuuming to continue. It should have been aware that the situation was dangerous and demanded the system be reviewed and redesigned for the safety of the workers involved, and it should ceased operations until that occurred.

_____

[9] Paragraph 1.2 of the attachment requires that the Subcontractor "have its own safety programs, safety procedures, safety equipment, safety personnel, and [] fully adhere to contractual, state, and or federal OSHA and other health and safety requirements as applicable." (**See** Safety & Work Rules Attachment, ¶ 1.2, R. 120a.) Paragraph 1.5 requires the Subcontractor to designate a "competent person" as required by OSHA for worksite inspection and "[a]ssured equipment grounding conductor programs." (**Id.** ¶ 1.5, R. 120a.)

Under this provision, in subsection (a), C&K agreed to be solely responsible for the prevention of accidents to its employees and to its sub-subcontractors' employees. However, McCurdy was employed by Graycor, the Contractor, and is not covered by this subsection. Under subsection (b), C&K is primarily responsible for the prevention of accidents but only for hazards arising out its "Work." The question, then, is whether there is any evidence in the record that C&K was negligent in the performance of its "Work."

## IV.

At the outset, C&K's defined "Work" under the contract was to provide vacuum trucks and flex hoses. Graycor had complete control of and responsibility for the vacuuming process itself and its employees carried out that process. It is undisputed that McCurdy was injured in carrying out Graycor's work, not C&K's Work under the contract. It is also undisputed that Harold Toh, a Graycor supervisor, directed and oversaw the attaching of the piece of rigid ungrounded PVC pipe to the end of the flexible hose. (McCurdy Deposition, R. 86a.) Larry Ray Waltermire, a fellow bricklayer employed by Graycor, also testified that Graycor purchased the PVC pipe and that one of its foremen duct-taped the pipe to the C&K grounded pipe. (Waltermire Deposition, R. 412a.) Nothing in the record establishes that C&K or its employees failed to do something they were supposed to or that its equipment was in any way deficient in the performance of its "Work."

Nonetheless, Appellants contend that there was evidence of negligence of record in an affidavit provided by Appellants' expert, professional engineer John G. Green, II. (**See** Affidavit, R. 457a-464a.) Green opined that the use of PVC pipe in the vacuum system provided, constructed, maintained and supervised by C&K constituted a significant deviation from professional standards promulgated by the National Fire Protection Association (NFPA). Though he did not claim to have examined any of the actual equipment at issue in this case nor any exemplar equipment, Green stated in relevant part:

• "The incident industrial vacuum truck pneumatically conveyed the mortar dust from the flue of C battery into the holding tank on the truck using non-conductive hoses as the transport system." (Affidavit, ¶ 19, R. 459a.)

• "The PVC Flex hose was non-conductive material. Non-conductive material should not be used in pneumatic systems to transport powdered materials, such as mortar dust, due to the potential static charge build-up within the transport system. If non-conductive flexible hose is required it should contain a spiral wire specifically designed to dissipate the static electric charge to the ground." (Affidavit, ¶ 21, R. 460a (citations omitted).)

• "It should have and would have been apparent to a sophisticated supplier of industrial vacuum services, such as C&K that preventing a spark hazard due to static electricity build-up in the transport system, whether to prevent the ignition of combustible dust or vapors or to prevent static shock to a worker is necessary, and that grounding and bonding of the entire transport system, including any attachments and hoses used to facilitate the vacuuming operation is required." (Affidavit, ¶ 24, R. 461a-62a (citations omitted).)

• "While C&K may have provided grounding for the incident vacuum truck, the entire transport system was not adequately bonded and grounded as required by NFPA 77-2005." (Affidavit, ¶ 25, R. 462a.)

• "Once the transport system piping or hoses had been installed, a continuity check of the bonding and grounding should have been performed by C&K to verify the system resistance to ground is not greater than 10 ohms. Periodic checks, usually at the start of every shift, should also be performed by C&K to verify the integrity of the system has not been compromised." (Affidavit, ¶ 26, R. 462a-63a (citations omitted).)

• "The failure of C&K to follow the industry accepted recommendations established by NFPA 77-2005 Standard to provide bonding and grounding of the transport system and truck deprived McCurdy [of] the protections afforded by those recommendations and was a cause of the injury to McCurdy. (Affidavit, ¶ 27, R. 463a.)

However, just because an expert opines something does not create a material question of fact; there must be evidence in the record upon which the opinion is based. **See** Pa.R.E. 705 ("If an expert states an opinion the expert must state the facts or data on which the opinion is based."). In this case, as elucidated in C&K's brief, Green's opinion is at variance with the uncontroverted evidence of record or appears to be based on his assumption that because an accident occurred involving C&K equipment, C&K must be negligent.[10]

---

[10] "The mere happening of an accident or injury does not raise an inference or presumption of negligence, nor even make out a *prima facie* case of negligence. Rather, the plaintiff must produce evidence to support his version of the incident; theories as to what may have transpired in an automobile accident may not be employed as a substitute for such evidence." **Churilla v. Barner**, 409 A.2d 83, 85 (Pa. Super. 1979) (internal citations omitted). **See also Hamil v. Bashline**, 392 A.2d 1280, 1284 (Pa. 1978); **Commonwealth v. King**, 444 A.2d 1294, 1295 (Pa. Super. 1982).

As C&K points out, Green stated multiple times that the flexible vacuum hose provided by C&K was "non-conductive material." (Affidavit, ¶¶ 19, 21, R. 459a-60a.) He goes on to declare that if a non-conductive flexible hose is used, "it should contain a spiral wire specifically designed to dissipate the static electric charge to the ground." (Affidavit, ¶ 21, R. 460a.) Contrary to that statement, though, the uncontroverted evidence of record established that C&K's hose did have the spiral wire. A letter to OSHA from Randy Hynek, Safety Director of Graycor, stated:

> The equipment set-up included the vacuum truck (grounded), 6" and 3" dia. **corrugated polyethylene hose <u>with embedded wire</u>**, safety "T" (emergency shut-off valve), and 1 ½" PVC pipe taped to the 3 x 1 ½" reducer.

(Graycor Letter of March 16, 2012, Randy Hynek, Safety Director of Graycor Services, R. 502a-504a (emphasis added).)

C&K also points out that in paragraph 24 of his affidavit, Green stated that C&K should have known that "grounding and bonding of the entire transport system . . . is required." (Affidavit, ¶ 24, R. 461a-62a.) However, Green's affidavit does not cite any evidence that C&K did not know it should have grounded and bonded the system, nor that C&K failed to carry out any duty it had to ground and/or bond the system.

Green also stated that, "[w]hile C&K may have provided grounding for the incident vacuum truck, the entire transport system was not adequately bonded and grounded as required by NFPA 77-2005." (Affidavit, ¶ 25, R. 462a.) He does not cite any evidence in the record establishing that the

transport system was not adequately bonded and grounded, nor does any evidence in the record support that conclusion. In fact, Graycor's letter to OSHA outlines extensive grounding and bonding efforts made by Graycor.

Further, Green stated in his affidavit that a "continuity check of the bonding and grounding should have been performed by C&K to verify the system resistance to ground is not greater than 10 ohms," apparently assuming that the continuity checks were not performed. (Affidavit, ¶ 25, R. 462a-63a.) As C&K points out, Green does not point to any evidence in the record regarding whether C&K actually conducted continuity checks, nor whether C&K was tasked therewith under the contract.[11] He also does not cite any evidence that the system resistance exceeded the 10-ohm limit at any time.

Finally, Green states that "[t]he failure of C&K to follow the industry accepted recommendations established by NFPA 77-2005 Standard to provide bonding and grounding of the transport system and truck deprived McCurdy [of] the protections afforded by those recommendations and was a cause of the injury to McCurdy." (Affidavit, ¶ 27, R. 463a.) As C&K notes, Green does not point to any evidence showing that it did not follow that particular

---

[11] In fact, the letter from Graycor to OSHA establishes that Graycor's vacuuming procedure included "[c]ontinuity checks made periodically throughout each shift." (Graycor Letter of March 16, 2012, Randy Hynek, Safety Director of Graycor Services, R. 503a.)

standard. It points out that Green also contradicts his earlier statement in paragraph 25 of the affidavit, wherein he said that the truck was grounded.

Because Green's report does not point to any countervailing evidence in the record to support his conclusion that C&K did not act with reasonable care, that report alone is insufficient to create a material issue of fact regarding C&K's duty of care. Accordingly, nothing in the record establishes that C&K or its employees failed to do something they were supposed to or that its equipment was in any way deficient in carrying out its Work under the contract. Because Appellants have not established a genuine issue of material fact that C&K failed to conform to its duty of care, making it negligently responsible for McCurdy's injuries, the trial court did not err in granting the motion for summary judgment.

Order affirmed.

President Judge Emeritus Bender joins the memorandum.

Judge Bowes files a dissenting memorandum.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 6/28/2022

- 16 -