**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| MARLENE BOSTICK A.K.A. MARIE BOSTICK | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|---|
| Appellant | : | |
| v. | : | |
| | : | No. 1344 WDA 2022 |
| CRAIG POST AND DENISE POST | : | |

Appeal from the Order Entered October 14, 2022
In the Court of Common Pleas of Erie County Civil Division at No(s):  No. 12638-2020

BEFORE:  PANELLA, P.J., BENDER, P.J.E., and PELLEGRINI, J.[*]

MEMORANDUM BY PELLEGRINI, J.:                    **FILED: JUNE 5, 2023**

Marlene Bostick a/k/a Marie Bostick (Bostick) is appealing from the order entered in the Court of Common Pleas of Erie County (trial court) granting the motion for summary judgment of Craig Post and Denise Post (collectively, the Posts) in her personal injury action.  Bostick argues that genuine issues of material fact preclude summary judgment.  We affirm.

**I.**

**A.**

Bostick filed a negligence complaint against the Posts alleging that she was an invitee when she "suffered severe and permanent injuries when she

_____

[*] Retired Senior Judge assigned to the Superior Court.

fell off the back porch at the [Posts]'s premises." (Complaint, at ¶ 5); (*see*

*id.* at 6). The complaint described the negligence as:

>     a. [The Posts] permitted and allowed the premises to become and remain in a negligent, defective and unreasonably dangerous condition;
>
>     b. [The Posts] negligently and carelessly maintained the porch on the premises without a railing or other protective construction, such that the porch was an unreasonably dangerous condition to invitees such as … Bostick;
>
>     c. [The Posts] negligently and carelessly failed to inspect the porch area of the premises for dangerous conditions and/or knew, or with reasonable diligence should have known that such dangerous conditions existed and greatly increased the risk to invitees such as [Bostick];
>
>     d. [The Posts] negligently and carelessly failed to post signs, protective tape, or other warnings to users of the porch including [] Bostick of the dangerous and defective conditions existing on said porch;
>
>     e. [The Posts] in a negligent and careless manner allowed the porch area to be used without written or verbal warning of the dangerous and unsafe condition of the porch due to lack of railings or other protective construction; and
>
>     f. [The Posts] acted negligently in failing to maintain the porch of the premises in a safe and non-dangerous manner and in direct violation of building, zoning and -residential-codes, including, but not-limited to, 6 Pa. Code Section 11.212 and 55 Pa. Code Section 2600.93.

(*Id.* at ¶¶ 7(a)-(f)).

When the pleadings were closed, the Posts filed a motion for summary

judgment in response to which Bostick filed a reply brief. The record contains

the following pertinent facts.

**B.**

On the afternoon of December 16, 2018, the Posts picked up Bostick at her home and brought her to their residence, where they had lived for 17 years. (**See** Bostick Deposition, 2/17/22, at 19); (Craig Post Deposition, 2/17/22, at 5). Bostick entered through the back door. (**See** Bostick Dep., at 24). The back entrance area is described as:

> [t]he rear door of the home opens to a concrete patio that measures 20 feet wide by 6 [feet] 4 inches deep. There **is a single step between the rear door and the surface of the patio**. The step has a tread depth of 18′/4 inches and it is 48 inches wide. The step is nominally 7′/z inches high and the riser height from the step to the threshold of the rear doorway of the home is 8 inches. (Emphasis added.)

(Record in Support of Defendants' Motion for Summary Judgment, at R.36, Report of David J. Bizzak, Ph.D., P.E., at 2) (emphasis added); (**see also id.** at R.39, Photograph of rear entrance to the Post residence).

Because the back entrance does not have a railing, Bostick placed her fingers under the siding of the house to assist herself in going up the single step and never asked for assistance or told the Posts she was having trouble. (**See** Bostick Dep., at 26, 55). Bostick and the Posts left the home through the back door approximately 45 minutes later to go shopping. (**Id.** at 28). At Bostick's deposition, she described her fall as follows:

> A: Okay. Denise was standing at the door holding the door open for me because she had the tray of cookies in her hand and the door on this side for me to go down.
>
> Q: On your right side.

A: She was on my right side.

Q: The door was on your right side.

A: The door opened that way.

Q: Let me ask you a question before you go on. I'm envisioning a door, an interior door that pulls open, is that correct, with a hinge on your right-hand side?

A: Oh, yes, yes. The door she was holding was the outside, the storm door we call it in Canada.

Q: We call it that here too.

A: Oh, good, good, good.

Q: So the storm door also had a hinge on the right-hand side.

A: Yes, and she was holding it open.

Q: So she was in front of you?

A: Yes.

Q: And was she standing on the step?

A: No, she was inside of the door.

Q: Okay. So she had her hand against the storm door holding it open?

A: Yes. Yes. Her back was to the inside door. Her back was to the inside door. She's—the door there, door here, she's here holding this one open, got the cookies in this hand, and I'm trying to get down in through her to exit.

Q: Okay. So tell me what happens then?

A: Then I took two steps from the kitchen, from the kitchen back door to the patio, and the sun was so blinding I couldn't see, so I just reacted to—then I just wanted to get out. I just, you know, how could I say? I was — the sun had already taken over. What was I going to do? I had no sunglasses on, and I—

Q: It blinded your eyes?

A: It did, and I just - then I just kept walking and that's when I went right over there.

Q: Okay, so is it fair for me to understand that you're saying that the fall occurred because the sun was at a point where it blinded you and you couldn't see where you were stepping?

A: Yes.  Yes.

(Bostick Dep., at 32-34).

Bostick testified that, despite Ms. Post being to her right, she did not try to grab Ms. Post's arm to steady herself.  Specifically:

Q: So as you're walking out, her arm was to the right to your right-hand side, correct?

A: Pretty well.  Pretty well, yes.

Q: And if you had reached up, you could have held onto her arm, couldn't you?

A: If it had occurred to me at that time.

Q: It just didn't occur to you.  That's why you fell?

A: When you're in the middle of the ocean and there's no boat around, there's nothing to grab.

Q: I understand.  I just want to understand, though, what you thought.

A: That's right, yeah.

Q: In this case—

A: Nothing, there was nothing.

Q: —her arm was there, but you—

A: I had no apprehension of her arm being there at that time.

Q. Right. But what I'm asking you is, her arm was there. You just were confused; is that correct?

A: Yes.

Q: And that's why you weren't able to grab her arm, correct?

A: That's right.

(*Id.* at 35-36). In other words, after exiting the home, Bostick was blinded by the sun, took two steps, walked off the end of the concrete patio/pad and landed in the grass on the right side of her body, suffering several injuries as a result. She was taken to St. Vincent Hospital by ambulance. (*See id.* at 48).

On October 14, 2022, the trial court granted the Posts' motion for summary judgment, explaining:

> The parties agree that at the time of her fall, [Bostick] was a licensee at [the Posts'] residence. The record reflects the area of the residence, referred to as a porch, consisting of a raised concrete platform/patio area with one cement step used to gain entrance through the back door. [Bostick] provides no zoning code provisions that require [the Posts] to have a railing at the back door. Mr. Post testified that he resided in the home for seventeen (17) years. Yet, Plaintiff provides no evidence to suggest [the Posts] had notice the back entrance posed a dangerous condition to visitors on the premises. Additionally, [Bostick] testified she had used the same door to enter the residence on at least one recent occasion and assisted entering by holding onto the siding of the house but never told [the Posts] she was having trouble or asked them to help her. On this occasion, she walked out of the residence, and the "sun was so blinding" she was unable to see where she was stepping and lost her footing, causing her to fall. [Bostick] testified she did not have an opportunity to reach out and grab the door or Ms. Post's arm to steady her fall.

Taken together in a light most favorable to [Bostick], the evidence shows that [the Posts] did not know nor did they have reason to know the back entrance posed a dangerous condition. Therefore, [the Posts] did not breach a duty of care to [Bostick]. Additionally, [Bostick] attributes the cause of her fall to the sun blinding her as she left the residence, causing her to become "confused and fall." As [Bostick] herself put it, "the sun was so blinding... then I just kept walking and that's when I went right over there." **See Ziegler v. Western Union Tel. Co.**, 179 A. 45 ([Pa.] 1935) (Plaintiff slipping on the greasy floor of a telegraph office was barred from recovery in a negligence action "where condition of the floor was obvious, and her view was not obstructed, notwithstanding she testified that the sun was shining brightly and blinded her."). Thus, there is no genuine issue of material fact regarding the cause of [Bostick]'s fall.

(Trial Court Opinion, 10/14/22, at 6-7).

Bostick timely appealed and filed a court-ordered statement of errors complained of on appeal. **See** Pa.R.A.P. 1925(b).

She raises five questions for our review challenging the trial court's grant of summary judgment:[1]

A. Whether the record contains sufficient evidence such that a jury could conclude that [the Posts], homeowners of 17 years, and

---

[1] In reviewing a challenge to an order granting summary judgment, "[w]e view the record in the light most favorable to the nonmoving party, and all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party." **Shellenberger v. Kreider Farms**, 288 A.3d 898, 905 (Pa. Super. 2023) (citation omitted). "Only where there is no material fact and it is clear that the moving party is entitled to judgment as a matter of law will summary judgment be entered." **Id.** (citation omitted). "Our scope of review of a trial court's order granting or denying summary judgment is plenary, and our standard of review is clear: the trial court's order will be reversed only where it is established that the court committed an error of law or abused its discretion." **Id.** (citation omitted).

without a railing on their home's rear exit, knew or should have known of the existence of a dangerous condition[;]

B. Whether the question of the open and obvious nature of the dangerous condition and/or the contributory negligence of [Ms. Post] is one for the jury[;]

C. Whether breach of the duty of care of [the Posts] is a jury question, even if lack of [a] railing and the construction of [the] rear exit stairs did not directly violate zoning and building codes[;]

D. Whether the record contains sufficient evidence such that a jury could conclude that the dangerous conditions of the rear steps were a cause of [Bostick]'s fall[; and]

E. Whether the judge erred in not even addressing [Bostick]'s claim of active negligence by the [Posts] in the motion for summary judgment.

(Bostick's Brief, at 3).

## II.

### A.

We are guided by the following legal principles. "Under Pennsylvania law, [t]he mere fact that an accident occurred does not give rise to an inference that the injured person was the victim of negligence." *Toro v. Fitness International LLC*, 150 A.3d 968, 976 (Pa. Super. 2016) (citation and internal quotation marks omitted). Instead, to establish negligence, a plaintiff must prove: "(1) a duty or obligation recognized by law; (2) a breach of that duty; (3) a causal connection between the conduct and the resulting injury; and (4) actual damages." *Id.* at 976-77 (citation omitted). "The nature of the duty which is owed in any given situation hinges primarily upon

the relationship between the parties at the time of the plaintiff's injury." *Id.* (citation and brackets omitted).

The "duty of a possessor of land toward a third party entering the land depends upon whether the entrant is a trespasser, licensee, or invitee." ***Hackett v. Indian King Residents Assn.***, 195 A.3d 248, 251 (Pa. Super. 2018) (citation omitted). The parties do not dispute that Bostick was a licensee, *i.e.*, " a person who is privileged to enter or remain on land only by virtue of the possessor's consent," which includes social guests. *Id.* (citation omitted); ***see*** Restatement (Second) of Torts ("Restatement"), § 330 Licensee Defined. A possessor of land is subject to liability for physical harm to licensees by a condition of the land but only if all three of the following conditions are met:

> (a) the possessor knows or has reason to know of the condition and should realize that it involves an unreasonable risk of harm to such licensees, and should expect that they will not discover or realize the danger, **and**
>
> (b) he fails to exercise reasonable care to make the condition safe, or to warn the licensee of the condition and the risk involved, **and**
>
> (c) the licensees do not know or have reason to know of the condition and the risk involved.

Restatement § 330, Cmt. h. (emphases added).

### B.

As a preliminary matter, as noted by the Posts, Bostick concedes that pursuant to ***Wisniewski v. Chestnut Hill Hospital***, 170 A.2d 595 (Pa. 1961) and ***Jones v. Plumer***, 226 A.3d 1037 (Pa. Super. 2020), *appeal denied*, 237

A.3d 407 (Pa. 2020), "if there is insufficient evidence to prove a causal connection between a defect in a property and a fall, the mere fact that the stairs lacked a railing is not, standing alone, proof of causation." (Bostick's Brief, at 22-23); (*see* the Posts' Brief, at 16-18).

In *Jones*, this Court observed:

> The lack of a hand railing, even when its absence violates a building code, is not proof of causation.
>
> In *Wisniewski* …, the Supreme Court of Pennsylvania held that the lack of a hand railing is not sufficient to prove fault on the part of the land owner without more. There, a pregnant women exited a hospital, missed a step, and tried to catch herself on the side of the steps without a railing. The trial court granted a compulsory nonsuit to the hospital on the issue of causation, and the Supreme Court affirmed. "The absence of a handrail on the right-hand side was not the proximate cause of plaintiff-wife's fall, and the violation of an ordinance or any negligence is not ground for recovery unless it was a proximate cause of plaintiff's injury." *Wisniewski*, 170 A.2d at 596 (footnote omitted).
>
> Thus, the absence of a hand railing does not establish causation on its own as Ms. Jones' brief implies. A plaintiff who falls down steps that lack a hand railing must still prove that the defendant's breach of a duty caused her to stumble in the first place.
> *…*…*
>
> The absence of a hand railing does not cause one to fall; its absence only makes it more difficult to catch oneself after the fall begins.

*Jones*, 226 A.3d at 1043-44.

Bostick attempts to distinguish *Jones* because the *Jones* court barred the plaintiff's testimony based on the Deadman's Act and, therefore, the only other evidence of causation consisted of medical records that inconsistently

described the fall, only mentioned the lack of a railing one time and did not mention the cause of the fall listed in the complaint. Conversely, argues Bostick, she testified that the lack of a railing contributed to her fall.

This argument is not persuasive because in **Jones**, we affirmed the grant of summary judgment on two bases. First, as stated above, because "the absence of a hand railing does not establish causation on its own a plaintiff who falls down steps that lack a hand railing **must still prove that the defendant's breach of a duty caused her to stumble in the first place**." **Jones**, 226 A.3d at 1044 (emphasis added). Second, "none of Ms. Jones' admissible evidence proves the causation she alleged in her Complaint." **Id.**

Bostick testified that she exited the back door, mis-stepped on the stair upon being blinded by the sunlight, and fell, resulting in injuries. While she alleges that the lack of a railing contributed to her fall, because she would have been able to catch herself, the lack of a handrail "[did] not **cause** [her] to fall[, which she clearly stated was due to the blinding sunlight]; its absence only ma[de] it more difficult to catch [herself] after the fall [began]." **Id.** (emphasis added). **Jones** is dispositive on the railing issue.

Moreover, while Bostick alleged in her complaint that the Posts were negligent for failing to maintain the area and for failing to post signs warning of a dangerous condition, unlike in **Jones**, where the parties agreed that the defendant failed to maintain the steps, there is no evidence that the Posts

failed to maintain their property. Further, they had no duty to warn guests because, as discussed below, there was no dangerous condition.

Because Bostick has failed to establish causation, she cannot prove negligence and the trial court properly granted summary judgment.

However, despite this conclusion, we will briefly address Bostick's specific claims to afford her a full review.

## C.

Bostick argues that the Posts had knowledge of a dangerous condition at their rear entrance since they had been living in the house and using the rear entrance for 17 years and Bostick was an elderly guest, so a jury could conclude that they violated a duty of care to Bostick by failing to warn her. *See* Restatement § 330, Cmt. h., at (b) (a possessor of land is liable for a licensee's physical harm if he fails to "warn the licensee of the condition and the risk involved."). The Posts respond that summary judgment was properly entered because there was no evidence that they knew or should have known that the lack of a handrailing for the back step presented a dangerous condition to guests. We agree with the Posts.

Even if the lack of a handrailing was the proximate cause of Bostick's fall, as the trial court properly observed, the record reflects that Bostick presented no evidence that the Posts had any notice in the 17 years they owned the property that the back entrance to their home posed a dangerous condition to guests. Bostick had been to the home before and testified that

she held the side of the house to steady herself, but never expressed any trouble to the Posts or requested help. Hence, taking the evidence in the light most favorable to Bostick, she failed to present any evidence that the Posts were either on notice or should have known of a dangerous condition of their property about which they failed to warn her.[2]

## D.

Bostick argues that "the question of the open and obvious nature of the dangerous condition and/or [her] contributory negligence … is one for the jury." (Bostick's Brief, at 12); *see* Restatement § 330, Cmt. h, at (c) (requiring plaintiff to establish she did not know or have reason to know of the dangerous condition).

Although "whether the licensee knew or had reason to know of the condition [of the relevant property] and its attendant risks[] is usually a question of fact for the jury[,] [t]his question may be decided by the court … if reasonable minds could not differ." *Long v. Manzo*, 682 A.2d 370,373 (Pa. Super. 1996), *appeal denied*, 693 A.2d 967 (Pa. 1997).

---

[2] Relatedly, Bostick maintains that even if the construction of the entryway and lack of a handrail did not violate zoning codes as alleged in her complaint, the Posts had a duty to put her on notice of a dangerous condition of which they were aware. (*See* Bostick's Brief, at 15-16). However, as stated above, the evidence presented by Bostick failed to establish that the Posts were aware of any dangerous condition on their property and, therefore, they did not violate a duty of care to advise her of one.

In this case, as previously observed, Bostick failed to establish that there was a dangerous condition on the Post property in the first place. Moreover, the evidence established that Bostick had used the entrance at least two other times and steadied herself by placing her hand against the side of the house. Because reasonable minds could not differ that it was open and obvious to Bostick that there was one step without a handrail leading up to the doorway from the cement pad/patio, the trial court properly decided the issue.[3]

**E.**

Finally, Bostick argues that the trial court erred in failing to address her claim regarding the Posts' "active negligence." (Bostick's Brief, at 23). She maintains that when Ms. Post held the storm door open for her while holding the tray of cookies, Bostick had to maneuver around her; therefore, her "ability to exit the rear door … was hampered by not only the sun blinding her, but also the presence of Ms. Post" and that "it is within reason that a jury

_____

[3] Bostick relies on **Williams v. Williams**, 1996 WL 36914, unpublished memorandum, at *1 (E.D. Pa. 1996). However, it is well-settled that we are "not bound by the decisions of federal courts inferior to the U.S. Supreme Court." **In re Stevenson**, 40 A.3d 1212, 1216 (Pa. 2012). Further, the only unpublished decisions that have any persuasive value for this Court are those filed by this Court after May 1, 2019. **See** Pa.R.A.P. 126(b). Even if **Williams** carried any persuasive value, it would not impact our decision. Bostick relies on the case for the proposition that for a licensee to "know or have reason to know" of a risk, she must "appreciate both the probability and gravity of the threatened harm." (Bostick's Brief, at 14). However, as we have repeatedly stated, the lack of a railing did not proximately cause Bostick's harm.

could conclude that Ms. Post's actions[] in placing [Bostick] in this precarious situation constituted active negligence." (*Id.* at 24).

The Posts respond that "active negligence" is a new cause of action or type of negligence that is barred by the statute of limitations[4] where she did not raise this claim of "active negligence" in her complaint. (*See* the Posts' Brief, at 29, 31); (Complaint, at ¶¶ 7(a)-(f)). In fact, argue the Posts, the complaint does not even mention that Ms. Post stood in the doorway, negligently restricting Bostick's pathway. (*See* the Posts' Brief, at 29).

It is well settled that "a new cause of action will not be permitted after the statute of limitations has run in favor of a defendant." *Echevarria v. Holley*, 142 A.3d 29, 37 (Pa. Super. 2016) (citation and brackets omitted).

> In determining whether a wholly different cause of action is introduced … nothing more is meant than the defendant shall not be required to answer a wholly different legal liability or obligation from that originally stated. … The test is whether an attempt is made to state facts which give rise to a wholly distinct and different legal obligation against the defendant.

*Frey v. Penn. Elec. Co.*, 607 A.2d 796, 797-98 (Pa. Super. 1992), *appeal denied*, 614 A.2d 1142 (Pa. 1992) (citation omitted). Explained another way,

> [a] new cause of action arises if, for example, [it] proposes a different theory or a different kind of negligence than the one previously raised or if the operative facts supporting the claim are changed.

---

[4] *See* 42 Pa.C.S. § 5524(2) (negligence action must commence within two years).

*Aetna Cas. & Sur. Co. v. Roe*, 650 A.2d 94, 103 (Pa. Super. 1994).

> Generally speaking, the term "passive negligence" denotes negligence which permits defects, obstacles or pitfalls to exist upon the premises, in other words, negligence which causes dangers arising from the physical condition of the land itself. "Active negligence", on the other hand, is negligence occurring in connection with activities conducted on the premises, as, for example, negligence in the operation of machinery or of moving vehicles whereby a person lawfully upon the premises is injured.

*Urban Redevelopment Auth. of Pittsburgh v. Noralco Corp.*, 422 A.2d 563, 567 (Pa. Super. 1980) (citation omitted).

Bostick's claim of "active negligence" is substantively different from what she pleaded in the complaint, which only alleged negligence related to the condition of the premises. (*See* Complaint, at ¶¶ 7(a)-(f)). Our independent review confirms that the complaint does not even mention that Ms. Post stood in the doorway or that this obstructed Bostick's path. (*See id.* at ¶¶ 1-7). Bostick cannot defeat the Posts' summary judgment motion based on this new cause of action for "active negligence," particularly where it was barred by the statute of limitations, and we discern no error by the trial court in choosing not to address it. *See Mishteyn v. Fitness Intern'l, LLC*, 271 A.3d 498, 506 (Pa. Super. 2022) (trial court properly granted summary judgment where plaintiff improperly raised new claim in response to summary judgment motion); *see also DeRitis v. City of Phil.*, 582 A.2d 738, 741 (Pa.

Cmwlth. 1990)[5] (concluding trial court properly refused to address new cause of action first raised in opposition to motion for summary judgment).

For all these reasons, Bostick is due no relief.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 6/5/2023

---

[5] "This Court is not bound by decisions of the Commonwealth Court. However, such decisions provide persuasive authority, and we may turn to our colleagues on the Commonwealth Court for guidance when appropriate." *Maryland Cas. Co. v. Odyssey Contracting Corp.*, 894 A.2d 750, 756 n.2 (Pa. Super. 2006), *appeal denied*, 909 A.2d 1290 (Pa. 2006), *cert. denied*, 549 U.S. 1305 (2007).